Points decided.

[No. 762.]

# THE STATE OF NEVADA, RESPONDENT, *v.* WILLIAM McCLEAR, APPELLANT.

SECTION 3, ARTICLE I, OF THE CONSTITUTION CONSTRUED.—The provisions of the Constitution that, "The right of trial by jury shall be secured to all, and remain inviolate forever," refers to the right of trial by jury as it existed at the time of the adoption of the Constitution.

COMMON LAW JURY—POWER OF THE LEGISLATURE.—It is competent for the legislature to point out the mode of impaneling juries, and the forms of the common law in procuring a jury can be changed and made subject to statutory regulations.

JURY LAW OF 1875.—*Held*, unconstitutional.

IDEM—MEANING OF WORDS "TRIAL BY JURY."—The terms "jury" and "trial by jury," as used in the Constitution, mean twelve competent men, disinterested and impartial, not of kin, nor personal dependents of either of the parties, having their homes within the jurisdictional limits of the court, drawn and selected by officers free from all bias in favor of or against either party, duly impaneled and sworn to render a true verdict according to the law and the evidence.

IDEM—REASON AND POLICY OF THE LAW.—The reason, expediency and policy of the law is determined by its passage in the legislature and approval by the governor. These questions furnish no ground for declaring the law invalid.

IDEM—RIGHT TO CHALLENGE A JUROR FOR ACTUAL BIAS.—It is not within the power of the legislature to deprive a citizen accused of crime of the right to challenge a juror for actual bias.

IDEM—RIGHT TO CHALLENGE A JUROR FOR IMPLIED BIAS.—The right to challenge for implied bias may, to some extent, be regulated by the legislature, care being always taken to preserve inviolate the right of trial by a jury of twelve impartial men.

IDEM—PEREMPTORY CHALLENGES.—There is a broad distinction between challenges for bias and peremptory challenges. The former challenges exist as matter of right. The latter is by favor of the legislature only. The number of peremptory challenges has always been regulated by statute.

IDEM—OBJECT OF CHALLENGES.—The great purpose of the right to challenge a juror for actual or implied bias is to secure to the defendant and the state a fair and impartial jury.

IDEM—EFFECT OF DECLARING THE LAW VOID.—*Held*, that the effect of declaring certain parts of the amended law of 1875 unconstitutional and void, is to leave in full force the sections of the law of 1861 which the act of 1875 attempted to amend and repeal.

IDEM—COMPETENCY OF A JUROR.—The question as to what expression of opinion or belief as to the guilt or innocence of the defendant will disqualify a juror discussed. *Held*, that the sum and substance of this whole question is, that a juror must come to the trial with a mind uncommitted, and be prepared to weigh the evidence in impartial scales and a true verdict render according to law and evidence.

| | |
|---|---|
| 11 | 39 |
| 11 | 106 |
| 11 | 107 |
| 11 | 108 |
| 11 | 127 |
| 11 | 149 |
| 12 | 122 |
| 12 | 304 |
| 12 | 305 |
| 14 | 450 |
| 15 | 94 |
| 15 | 258 |
| 16 | 113 |
| 16 | 136 |
| 16 | 127 |
| 17 | 370 |
| 30*1001 | |

| | |
|---|---|
| 11 | 39 |
| 22 | 354 |

| | |
|---|---|
| 11 | 39 |
| 125 | 450, |
| 25 | 451 |

APPEAL from the District Court of the Ninth Judicial District, Elko County.

The facts are stated in the opinion.

*Rand & Van Fleet,* for Appellant.

I. The act of the legislature of the state of Nevada concerning juries in criminal cases, approved March 2, 1875, is unconstitutional and void. It conflicts with section 3 of article I of the Constitution of the state of Nevada. It conflicts with section 8 of article I of the Constitution of the state of Nevada. It is in derogation of common law and against reason and justice. It deprives a party charged with a capital or infamous crime of the right of trial by an impartial jury. (Secs. 3 and 7 Chitty's Black., book 3, 362 to 365; 13 N. Y. Court of Appeals, 425–427; 7 Nev. 157; 2 Parker's Crim. Rep. 402; 41 N. H. 551; 11 Cal. 175; 43 Cal. 331; 1 Bishop's Crim. Pr., secs. 908, 909; 1 Bouvier's Law Dictionary, sec. 771; 1 Bishop's Crim. Pr., secs. 897–900, 910, 911, 912; 43 N. J. 33; 7 Cow. 108.)

II. The defendant's right to a peremptory challenge is a special privilege, and he is not compelled to exercise that privilege upon a juror who is disqualified by law. (16 N. Y. Court of Appeals, 505; 40 Cal. 248.)

III. Due process of law, as understood by the framers of the Constitution, means a substantial right as distinguished from a mere matter of form. Due process of law at the time of the adoption of our Constitution, according to popular acceptation and its legal significance by a long course of adjudications, meant the right of a person charged with a felony to a trial by an impartial jury, drawn from the body of the people, within the jurisdiction of the court trying the cause. That when so selected the jurors should be composed of such material as would constitute a good common law jury; a jury according to the general acceptance of the term at the time of the adoption of the Constitution; a jury according to the law of the land, as generally understood and accepted at the time. (1 Kent's Com. 624; note, page 626; 4 Hill, 140; 13 N. Y. Court of Appeals, 392–3, 416–17; 55 Ill. 280; 8 Gray, 342–50; 48 N. H. 57.)

IV. The legislature may prescribe the mode of obtaining a jury, but it cannot, under the pretext of regulating the manner of obtaining and impaneling a jury, deprive a party of a substantial right guaranteed by the Constitution. (7 Cal. 16; 3 Nev. 341; 53 N. Y. 164; *Eason* v. *State of Tennessee.*)

*J. R. Kittrell, Attorney-General,* for Respondent.

I. The "right of trial by jury" simply means that one accused of a violation of the criminal enactments of this state shall have the privilege of being tried for the offense imputed to him by a jury of twelve men, selected according to the requirements of law, and who possess those qualifications which the law of the state provides they shall possess, in order to be legally constituted jurors to try a criminal case.

While I am prepared to admit that by the terms of the state constitution all the essential and material elements of a trial by jury, as they were established and existed at common law, were guaranteed to the citizens of this state, I am not willing to concede that the framers of our fundamental law intended to strip the legislature of the right to adopt forms and to make all needful rules and regulations whereby that ancient and peculiar form of trial might be extended to a citizen charged with an infraction or violation of any part of the criminal code.

I claim that the statute of 1875, now in question, merely points out the mode of securing the trial by jury—this and nothing more; and this being its sole object, and only aim and purpose, it is not only constitutional, but clearly within the power of the legislature to enact it. (*Dowling* v. *State of Mississippi,* 5 S. & M. 681; *Jones* v. *State,* 1 Ga. 610–619; *Walter* v. *People,* 32 N. Y. 147; *Warren* v. *Com.,* 37 Penn. 45; *Hartzell* v. *Com.,* 40 Penn. 462.)

II. The law, as amended, is in no sense repugnant to the Constitution, because it does not deprive a defendant charged with the grade of crime therein specified of his right of trial by jury; on the contrary, the very object of its enactment was to point out the *modus operandi* by which that right should be secured to him.

Trial by jury cannot be dispensed with in criminal cases, but it is obviously within the scope of legislation to regulate such trial. (32 N. Y. 159.)

III. A trial by jury is understood to mean, *ex vi termini*, a trial by a jury of twelve men, impartially selected, who must *unanimously* concur in the guilt of the accused before a legal conviction can be had. (2 Story on Const., sec. 1779.)

IV. Every legal presumption is in favor of the constitutionality of an act of the legislature. (*Respublica* v. *Duquet*, 2 Yeates, 493; *Com.* v. *Smith*, 4 Binn. 123; *Bank* v. *Smith*, 3 S. & R. 68; *Eakin* v. *Raub*, 12 S. & R. 340; *Com.* v. *Zephon*, 8 W. & S. 382; *Sharpless* v. *Mayor, etc., of Philadelphia*, 9 Harris, 147.)

By the Court, HAWLEY, C. J.:

The defendant was indicted, tried and convicted of the crime of rape.

Upon the trial, when the court ordered the clerk to draw from the box containing the list of trial jurors thirty-six persons, the defendant, by his counsel, excepted to the order upon the ground that the act of the legislature of this state entitled, " An act to amend an act entitled 'An act to regulate proceedings in criminal cases in the courts of justice in the territory of Nevada,' approved November twenty-sixth, eighteen hundred and sixty-one " (approved March 2, 1875), under which said jury was so ordered to be drawn, is unconstitutional and void, for the reason that said act deprives a party accused of crime of the right of trial by a fair and impartial jury. That under the provisions of said act, a person accused of crime may be deprived of his life or liberty without due process of law, in this, that said act does not allow a defendant charged with a felony to challenge a juror for actual bias; nor does it allow such defendant to challenge a juror for having formed or expressed an unqualified opinion as to defendant's guilt. Thirty-six names were then drawn from the box, and being examined as to their actual state of feeling towards the defendant, and all matters from which a bias against the defendant might be inferred, as by

said act allowed, fourteen of the thirty-six jurors upon their *voir dire* stated that they knew, or had heard the facts in the case, and had formed and expressed an unqualified opinion that defendant was guilty of the crime charged. Ten out of the fourteen said they were biased and prejudiced against the defendant. Four of this number said they could not give defendant a fair and impartial trial, and one of them stated as a reason for his bias and prejudice, in addition to his opinion upon the facts, that he had had a personal difficulty with defendant.

To each of the fourteen jurors the defendant interposed a challenge for implied bias, for having formed and expressed an unqualified opinion of the guilt of the defendant; and also, for actual bias for entertaining such a state of mind toward the defendant as would prevent said juror from giving defendant a fair and impartial trial. Each and every challenge so interposed was overruled by the court, and the ruling excepted to by defendant. The state and the defendant then, in pursuance of the provisions of said act, each challenged peremptorily one juror alternately until each had taken twelve peremptory challenges. Thereupon the court ordered the clerk to swear the remaining jurors to try the cause, to which order defendant excepted and assigned the same reasons as were stated in his objections at the commencement of the trial, and the further reason that there were two among the jurors that were ordered to be sworn to try this cause, who had expressed themselves as being actually biased against the defendant, and had formed and expressed an unqualified opinion that defendant was guilty, and that the defendant had been denied the right to challenge off said jurors from the panel. These objections were overruled, defendant excepting.

The validity of the act is the only question presented for our decision upon this appeal. It will be observed that the act changes the law of 1861 in two important particulars. First. It leaves out any ground of challenge: "For the existence of a state of mind on the part of the juror in reference to the case which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he

will not act with entire impartiality, and which is known in this act as actual bias." (Stat. 1861, p. 470, sec. 339.) Second. It leaves out as one of the grounds for implied bias : "Having formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged." (Id., sec. 340.) It then provides that if the offense be punishable with death or imprisonment for life in the state prison, that from a list of thirty-six jurors otherwise possessing the statutory qualifications, the state and the defendant shall challenge peremptorily one juror alternately till each has taken twelve peremptory challenges, and the remaining twelve jurors shall be sworn to try the case. If the defendant shall refuse to take his peremptory challenges the court shall take it for him." (Stat. of 1875, p. 117.)

It is argued by defendant's counsel, first, that the act conflicts with section 3 of Art. 1 of the Constitution; second, that it conflicts with section eight of Art. 1 of the Constitution; third, that it is in derogation of common law, and against reason and justice.

Section 3 of Art. 1 of the Constitution of this state provides that: "The right of trial by jury shall be secured to all, and remain inviolate forever."

This provision has reference to the right of trial by jury as it existed at the time of the adoption of the Constitution, and we are called upon to determine what were the constituent elements of a jury as understood at that time. It has been frequently decided in many of the older states that the trial by jury contemplated by the constitution is a trial by a common law jury.

The only authorities produced by the state, in favor of the constitutionality of the act in question, go to the extent that it is competent for the legislature to point out the mode of impaneling juries, and that the forms of the common law in procuring a jury can be changed and made subject to statutory regulations.

In commenting upon this question the court in *Dowling* v. *The State of Mississippi*, say: "Thus while the constitution must be construed to have adopted the generous privilege of the common law trial by jury in its essential ele-

ments, it reasonably follows that whatever was an accidental and not an absolute part of that institution, the mere superfluous forms and complicated proceedings of the English courts, is not necessarily included to have been guaranteed in the right by the clause of the constitution. It was therefore competent for legislation to point out the mode of impaneling juries, both grand and petit, so long as it did not intermeddle with the *constituents* of those bodies." (5 *Smedes Marshall*, 682.)

This general principle is well settled by the authorities. In addition to those cited by the Attorney-General in his brief, we refer to the following:    *The People* v. *Fisher*, 2 Parker's Cr. R. 406; *Perry* v. *The State*, 9 Wis. 21; *Stokes* v. *The People*, 53 N. Y. 164; *Colt* v. *Eves*, 12 Conn. 251.

The same doctrine was announced by this court in *The State* v. *O'Flaherty*. Justice Garber, in delivering the opinion, said: "The power of the legislature to mould and fashion the *form* of an indictment is plenary.    Its *substance*, however, cannot be dispensed with.    Upon the same principle, it is held that a statute which destroys or materially impairs the right of trial by jury, as it existed according to the course of the common law, is repugnant to the constitutional guarantee of that right." (7 Nev. 157; see also *State* v. *Cohn*, 9 Nev. 189.)

This brings us to the controlling question in this case. Are the omitted portions of the law of 1861 essential constituents of a jury as known at common law? This opens up a wide and extensive field of inquiry and necessarily involves a patient examination of many authorities.    It was claimed upon the oral argument that the constitutional provision only requires a jury of twelve men.    That the number is all that is essential.    We must confess that this appears to have been the view entertained by the legislature in the passage of the amended act.    If this be true, it would be within the power of the legislature to take away all the other qualifications without violating any of the provisions of the Constitution, and the right of trial by jury—so long esteemed as the palladium of our liberties—if such power was exercised, would soon dwindle into insignificance and

become a byword and reproach upon our entire 'judicial system. If such an opinion was ever seriously entertained, it seems to us that a moment's thought ought to have dispelled the illusion. Surely the provision meant twelve sane men. An insane man, an idiot, or a lunatic, would count in number the same as a sane man. An alien would be equal to a citizen; yet at common law such persons were never allowed to sit as jurors, but were challenged *propter defectum.* A man who had taken money for his verdict, or had eaten or drank at the expense of either party, would count in number equal with others who were not guilty of such misconduct; at common law such persons were always excluded from the jury when challenged *propter affectum.* Again, a man who had been convicted of a felony would count equal with the citizen who had never been accused of any crime; but at common law such a man could always be challenged *propter delictum.* Many other comparisons might be made; but these are deemed sufficient. To our minds the conclusion is self-evident that something more than the number twelve ever was, and is, essential to the formation of a jury. We think that the term "jury," as it is used in the Constitution, means twelve competent men who are free from all the ties of consanguinity and all other relations that would tend to make them dependent on either party. It means twelve men who are not interested in the event of the suit, and who have no such bias or prejudice in favor of, or against, either party as would render them partial toward either party. These, among others, are the general definitions which we consider are guaranteed by the Constitution. Some of these qualifications are recognized by the statute as essential, and need no illustration or argument to establish the necessity of preserving them. Others are left out, and with them we have to deal.

Under the amended act, the inestimable privilege of being tried by a jury is susceptible of the following illustrations: A person is indicted and brought to trial for the crime of murder. The names of thirty-six men are drawn from the jury-box, who possess the statutory qualifications. These men are then "examined as to their actual state of

feeling toward the defendant, and as to all matters from which a bias against the state or the defendant may be inferred," and it is found that twenty-four out of the thirty-six were actually present at the preliminary examination of the defendant before the committing magistrate; had heard all the evidence and had made up their minds, formed and expressed the opinion and still entertain it, that he was guilty and ought to be hung. They further state, under oath, that they are so biased and prejudiced against him that they cannot impartially try the case. The other twelve are shown to be impartial, and in every respect are fully competent to act as jurors. This examination being concluded, "the state and the defendant shall challenge peremptorily one juror alternately, till each has taken twelve peremptory challenges, and the remaining twelve jurors shall be sworn to try the case." Now, all that the district attorney would have to do in order to secure a conviction, would be to challenge off the twelve men who were impartial. The defendant could only challenge twelve out of the other twenty-four, and this would leave twelve men to "be sworn to try the case" who had declared that defendant was guilty, still believed him guilty, and who were so prejudiced against him that they could not give him a fair and impartial trial. Still the sacred number, twelve, remains inviolate, and this, we are told, is all the law considers essential to constitute a jury. The defendant protests against the injustice of such a trial, and demands that he be allowed to challenge such jurors for cause. This right is denied him. The trial proceeds. The same evidence is offered that was produced at the preliminary examination. The case is submitted, and the defendant is, of course, convicted. Whereupon the prisoner, when he comes up before the court for sentence, is informed of the great privilege that has been guaranteed to him, of the right of trial by a jury of twelve men. However gratifying the result of such a trial might be to the prosecution, it is doubtful if the defendant could fully appreciate the blessings, about which so much is said in the books, of the inestimable privilege of being tried by a jury. On such a trial, the presumption of innocence, as required

by other provisions of the statute, is overthrown. The defendant, being compelled to go to trial before a jury that had declared his guilt, would have to produce evidence in order to establish his innocence. Let us reverse the rule, and apply it against the state. Suppose that when the thirty-six names are drawn from the box, twenty-four answer that they are well acquainted with the defendant, and have heard all the facts pertaining to the case, and have arrived at the deliberate conclusion, have formed and expressed the opinion and still entertain it, that the defendant is innocent. The defendant challenges the twelve competent jurors. The prosecution can only challenge twelve, and this leaves a jury of twelve men who have already prejudged the case in favor of the defendant. What rights would the state have on such a trial? None whatever. Would the general interests of the public be protected? Certainly not. And yet we have, in the eye of this law, the right of trial by jury preserved inviolate. Would it be necessary, in such a case, to go through with the farce (for farce it certainly would be) of a trial? We apprehend not. The result in this case would be quite satisfactory to the defendant, but the prosecution and the people at large would have grave doubts of the utility of the protection afforded by the Constitution. We have adopted these extremes for the purpose of illustration only. Either of the events were liable to happen. Even in the present case, fourteen out of the thirty-six had prejudged the case against the defendant. The number, however, has nothing to do with the principle that is involved in this decision, and that is, whether the defendant or the state can, by any act of the legislature, be deprived of the right to challenge such jurors for cause, either for implied or for actual bias?

The illustrations we have made tend to show the injustice that might exist in individual cases under the practical workings of the law. Our purpose, however, is beyond the determination of this question. We must deal with the act as we find it, and determine, from all the lights that can be ascertained, whether or not it violates any of the provisions contained in the Constitution; and if it does not,

the act may stand; but if it does, it must fall. The reason, expediency and policy of the law has been determined in its favor by the co-ordinate departments of our state government; and however much we may doubt their judgment, we here accept it as final, and consider that the act deserves, as it has received, the careful attention and deliberation of this court.

After the most thorough examination we have been able to make, we are of the opinion that it is not within the power of the legislature to deprive a citizen accused of crime of the right to challenge a juror for actual bias. This right cannot in any manner be abridged. The right to challenge for implied bias for having formed or expressed an opinion upon the guilt or innocence of defendant may, to some extent, be regulated by the legislature, care being always taken to preserve inviolate the right of trial by a jury of twelve impartial men. This right to challenge for the principal cause, or to the favor, exists independent and irrespective of the right to exercise peremptory challenges as usually allowed by statutory enactments. We are, therefore, irresistibly led to the conclusion that the act in question is in both of these respects clearly in violation of the provisions of the Constitution. To prove the correctness of these conclusions, we propose, at some length, to review the authorities.

Sir Edward Coke, in vol. 1 of his Institutes of the Law of England, in discussing the question of the right of trial by jury, under the head of *propter affectum*, says: "And this is of two sorts; either working a principal challenge, or to the favor. And, again, a principal challenge is of two sorts; either by judgment of law without any act of his, or by judgment of law upon his own act." After treating these questions at considerable length, he adds: "Now the causes of favor are infinite, and thereof somewhat may be gathered of that which hath been said, and the rest I purposely leave the reader to the reading of our books concerning that matter. *For all which the rule of law is that he must stand indifferent as he stands unsworn*." (1 Coke, 157, b.)

The result of our investigation authorizes us to state in

the outset that the language in italics was ever at the common law recognized as an essential qualification of a juror.

At the trial of Peter Cook, in the Old Bailey, in 1696, for high treason, these proceedings took place:

"Cook. My lord, before the jury is called, I am advised, that if any of the jury have said already that I am guilty, or they will find me guilty, or I shall suffer, or be hanged, or the like, they are not fit or proper men to be of the jury.

"L. C. J. Treby. You say right, Sir; it is a good cause of challenge." (13 State Trials, 333.)

In Bacon's Abridgment we find that: "Jurors ought to be *omni exceptione majores*, and by the words of the writ such *per quos rei veritas melius sciri poterit, et qui nec* the plaintiff, *nec* the defendant, *aliqua affinitate attingunt*. Which words contain all causes of objection from partiality or incapacity, consanguinity and affinity; therefore, if the juror be under the power of either party, as if counsel, servant of the robes or tenant, he is expressly within the intent of the writ. So, *if he has declared his opinion* touching the matter, or has been chosen arbitrator by one side,  *  *  or has done any act by which it appears that *he cannot be impartial;* as if he has eaten or drunk at the expense of either party, or taken money to give his verdict; these are principal causes of challenge.   But, though a juror is not under the distress of either side, or has not given apparent marks of partiality, yet there may be sufficient reason to suspect he may be more favorable to one side than the other.   And this is a challenge to the favor.  *  *  And in these inducements to suspicion of favor, the question is, whether the juryman is indifferent as he stands unsworn?   For a juryman ought to be perfectly impartial to either side; for otherwise his affection will give weight to the evidence of one party, and an honest but weak man may be so much biased as to think he goes by the evidence, when his affections add weight to the evidence.   Now, since the writ expects those by whom the truth may best be known, it excludes all those who are apparently partial without any trial, because they are not under the qualifications in the writ, since the truth cannot be known to them.   But where the partiality is not apparent,

but only suspicious, then the juror is to be tried, whether favorable or not, that is, whether he comes within the description of the writ; and if the triers think he does, then he is to be set aside." (5 Bacon's Ab. 353.)

To the same effect is Blackstone, the most eminent of English authors on the common law: "Jurors may be challenged *propter affectum*, for suspicion of bias or partiality. This may be either a *principal challenge* or *to the favor*. A principal challenge is such, where the cause assigned carries with it *prima facie* evident marks of suspicion, either of malice or favor. * * All these are principal causes of challenge; which if true, cannot be overruled, for jurors must be *omni exceptione majores*. Challenges to the favor, are where the party hath no principal challenge; but objects only some probable circumstances of suspicion, as acquaintance and the like; the validity of which must be left to the determination of triers, whose office it is to decide whether the juror be favorable or unfavorable. * * Challenges *propter delictum* are for some crime or misdemeanor that affects the juror's credit, and renders him infamous." (2 Chitty's Blackstone, 280.)

From these quotations it will be observed how scrupulously delicate and how impartially just this law approves itself in the constitution and frame of a tribunal, thus contrived for the test and investigation of truth, especially in its caution against all partiality and bias, "by quashing the whole panel or array if the officer returning is suspected to be other than indifferent; and repelling particular jurors if probable cause be shown of malice or favor to either party."

Thus stood the law in England at the time of the revolution, where it was justly esteemed as the great bulwark and safeguard of civil rights and political freedom. When our ancestors removed to this country they brought this system with them and claimed it as their birthright and inheritance, and the guarantee of a right of trial by jury has since been inserted, not only in the federal, but, as we believe, in every state constitution.

Before referring to the American cases it may be well to state that no case can be found in the books having any

direct reference to a statute like the one under consideration, for the simple reason that no other state in the Union has ever attempted by legislation, in criminal cases, to deprive a citizen accused of crime of the right to challenge a juror at the trial, for actual bias, or *to the favor*, and but one (Tennessee) to impair the right to challenge for implied bias, or *principal cause*, upon the ground of the juror having formed or expressed an unqualified opinion of the guilt of the defendant. But nevertheless many cases have been found that are applicable, and, as we think, decisive of the questions under consideration.

Before commenting upon these authorities it is also proper to state that the provisions of the constitutions of the states of Ohio, Indiana, Illinois, Wisconsin and Tennessee, are the same as in the constitution of this state. Massachusetts and New Hampshire guarantee the "right of trial by jury." New York, Georgia and Pennsylvania, "a trial by jury, in all cases in which it has been heretofore used, shall remain inviolate." In Connecticut and Louisiana the words "impartial jury" appear. The provision, "in all cases in which it has been heretofore used," means that in cases that were not triable by a jury before the adoption of the constitution the parties would not be entitled to the right of trial by a jury after its adoption, and this general principle has been applied to every state constitution.

The proper and well-settled construction of the constitutional provision which declares that the right of trial by jury shall remain inviolate, is, that the right of trial by jury shall remain inviolate, as it existed at the formation of the constitution. Cases which before the constitution were not triable, need not be made so now. Parties cannot now be deprived of trial by jury who were entitled to demand it at and before the formation of the constitution. And, on the other hand, cases not having the right at that time to demand a jury, cannot now demand a jury as of right, because of the constitutional provision. (Cooley's Constitutional Limitations, 410, note 2, and authorities there cited; Sedgwick on Statutory and Constitutional Law, 547.) The decisions found in the states that guarantee the right of trial by

an impartial jury, are alike applicable to this case.    It was decided in the *State* v. *Wilson*, Butler, C. J., delivering the opinion, that the constitutional provision for an impartial jury " is in affirmance of the common law." (38 Conn. 137.)

The distinction between challenges for principal cause and challenges to the favor, so often spoken of in the books, is well understood.    The former is for what in judgment of law will disqualify a juror, and is known as implied bias. The latter is anything else which operates to render him partial, and is known as actual bias.    There is also a broad and clear distinction between these causes of challenge and the right to interpose a peremptory challenge as is usually allowed by statutory enactments.    The former challenges exist at law as matter of right.    The latter is by favor of the legislature only.    The number of peremptory challenges has always been regulated by statute.    It is a personal privilege given to the defendant and the state to select a jury from jurors who are in all respects competent and impartial, and it enables the defendant and the state to make personal preferences in the selection of the jury.    This is a question of policy and humanity which may always be decided by the legislature.

With these explanations we proceed to the examination of the American cases.

In *The People* v. *Vermilyea et al.*, the question of the extent of the right, guaranteed by the constitution of the state of New York, of trial by jury, was thoroughly discussed by learned counsel and ably decided by the court.    At the trial, a juror (Mr. Norwood) was challenged for the principal cause.    He testified that he had heard all the evidence given on the former trial, having been present at it; that he had made up his opinion perfectly on the evidence that the defendants were all guilty and had frequently expressed his opinion to that effect.    In reply to questions asked by the district attorney, he stated that he felt no bias or partiality against any of the defendants; that if the testimony given on the trial should appear as it did on the former trials, he should certainly find the defendants all guilty; and added, that he thought he felt compelled to give a verdict according to his oath, and the evidence as it should appear.

The real questions submitted to the supreme court for decision were, whether a man who had formed and expressed an opinion that defendants were guilty was, in judgment of law, an impartial juror; and whether the challenge should have been, as it was, for principal cause, or to the favor. In the argument of the case it was admitted that every citizen, whether arraigned for crime or impleaded in a civil action, is entitled to a trial by a fair and impartial jury. The court say: "The trial by jury is justly considered an invaluable privilege; but it would become a mockery if persons who had prejudged the case were admitted as impartial triers. All the elementary writers, with the exception of Chitty, lay down the proposition broadly, that if a juror has declared his opinion beforehand it is a good cause of challenge." (7 Cow. 108.) After reviewing the authorities, Woodworth, J., in delivering the opinion says: "Upon the reason of the thing, the authority of adjudged cases, and the general understanding of the bench and bar, I have no doubt that the law is not chargeable with such injustice as to warrant the admission of a juror who, from a knowledge of the facts, or information derived from those who knew the facts, shall have formed or expressed an opinion." In the course of the opinion the judge says it will not be pretended that any members of the grand jury who found the indictment, or any of the jurors who sat on the former trial, would be admissible, and that he could not discriminate between those jurors and the juror Norwood, who had formed as decided an opinion on the merits of the case as any of them. "Can it be for a moment supposed, that a man who had formed such an opinion as Norwood had could stand indifferent or impartial?" It was decided that "the statutory provision authorizing the challenge of a grand juror, who shall be called on the petit jury to try the same indictment, is clearly in affirmance of the common law; and proves that when a man has formed an opinion, even upon an *ex parte* hearing, it is a valid exception to him; *a fortiori*, the objection is conclusive if the juror has formed an opinion upon hearing the whole case. * * * the wisdom of the law has always required

the trial without prejudice or partiality as respects either party." It was also decided that the law presumes that the expression of an opinion on the merits of a case indicates bias, or that the mind of the juror is decidedly unfavorable to the defendant, and that such expression of opinion is a principal cause of challenge.

In the case of *The People* v. *Allen* it was decided by the Court of Appeals that "it is the right of a prisoner to be tried by an impartial jury, and the juror must be indifferent both as to the person and the cause to be tried." (43 N.Y. 33.)

Upon the common law rule the court, in the case of *The Commonwealth* v. *Hussey*, granted a new trial; it appearing that two of the jurors on the trial had been of the grand jury which found the indictment; the court observing, "that if these jurors attended to their duty when upon the grand jury, they could not have been impartial on the trial." (13 Mass. 221.)

In *Perry* v. *The State, supra,* it was contended that an act of the legislature providing the mode of selecting jurors was unconstitutional. Counsel for the defendant argued that as the drawing of jurors by lot became a part of the law of England before the revolution, that it was therefore a part of the law of this country at that time, and was universally practiced. The court correctly held that the manner of designating the persons who were to act as jurors at any term of court was clearly within the control of the legislature, and that the constitutional right to a jury trial was not impaired merely because the statute required that the jurors had been selected instead of drawn; and in deciding this question the court say: "We think that in order to preserve the right of trial by jury, it is not necessary to preserve any particular mode of designating jurors, even though such mode may have been in force at the time of the adoption of the constitutional provision. All that the right includes *is a fair and impartial jury,* not the particular mode of designating it."

In *Gibbs* v. *The State* the court say: "The Constitution secures to the accused, in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of

the county or district in which the crime shall have been committed." (3 Heiskell, 76.)

To the same effect are the decisions in our own state. "That all persons held on a criminal charge," say the court in *Ex parte Stanley*, "have the legal right to demand a speedy and impartial trial by jury, there can at this time be no doubt. The right was guaranteed to the English people by the great charter; it has been confirmed in subsequent bills of right, iterated and reiterated by the courts, and defended and protected by the representatives of the people with jealous care and resolute courage. In this country the same right is generally guaranteed by the constitutions of the respective states, or secured by appropriate legislative enactments." (4 Nev. 116.)

But returning to the decisions directly upon the point whether a defendant in a criminal action has the constitutional right to challenge a juror for cause, for having formed or expressed an opinion of defendant's guilt, or to challenge a juror for actual bias, for entertaining a prejudice against the defendant.

In *Fleming* v. *The State*, the defendant had been tried and convicted of the crime of arson. At the trial, his counsel challenged a juror for cause, and in support of the challenge asked him whether he was not one of the Milford committee at the time that Fleming was arrested, "and did you not counsel and direct that he should be kept in custody without a warrant, for some ten days; and was there not an agreement between the members of that committee, to indemnify each other against any prosecution that Fleming might institute against them for said imprisonment; and do you not consider his conviction in this case as necessary to you and your associates' protection from such prosecution?" The lower court considered the question irrelevant, and refused to allow it to be answered. On appeal, the supreme court say: "We think the court erred in refusing to allow the juror to answer. If the facts assumed in the question existed, they established such a relation between the juror and the defendant as was scarcely compatible with that impartiality which should characterize a juror. * * * That

a juror has formed an opinion is one ground of challenge; that his relations or feelings toward the objecting party are such that he would not be likely to form an impartial one in the jury-box, is another. The following may be deduced from the authorities as grounds of challenge for cause. There may, perhaps, be additional ones:

1. That the juror is interested in the pending, or a similar suit.

2. That he does not possess the statutory qualifications.

3. That he is of kin to one of the parties.

4. Personal hostility.

5. A pending lawsuit between the juror and the party.

6. That the juror is master or servant, landlord or tenant, of the opposite party, or has eaten or drank at his expense since being summoned as a juror, or has promised to find a verdict for him.

7. That he has formed or expressed an opinion in the cause, is a witness in it, or has been a juror on a former trial of it." (11 Ind. 235.)

How far the ground of challenge for having formed or expressed an opinion in the cause, can be regulated by the legislature without impairing the constitutional right of a trial by a jury of twelve impartial men, may be inferred from what is said by the court of appeals in *Stokes* v. *The People, supra.* It was there claimed by counsel for the defendant, that the jury law of New York was unconstitutional. The law provides that the previous formation or expression of an opinion or impression in reference to the circumstances upon which any criminal action at law is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in regard thereto, shall not be a sufficient ground of challenge for principal cause to any person who is otherwise legally qualified to serve as a juror upon the trial of such action, provided the person proposed as a juror, who may have formed or expressed or has such an opinion or impression as aforesaid, shall declare on oath that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial, and that such previously

formed opinion or impression will not bias or influence his verdict; and provided the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror. The court held the law to be constitutional. In the opinion delivered by Grover, J., it is distinctly announced that "any act of the legislature providing for the trial otherwise than by a common law jury composed of twelve men, would be unconstitutional and void; and any act requiring or authorizing such trial by a jury partial and biased against either party, would be a violation of one of the essential elements of the jury referred to in and secured by the constitution." After quoting the provisions of the statute, the court say: "It will be seen that the intention of the act was not to place partial jurors upon the panel, but that great care was taken to prevent that result. The end sought by the common law was to secure a panel that would impartially hear the evidence, and render a verdict thereon uninfluenced by any extraneous considerations whatever. If the person proposed as a juror can and will do this, the entire purpose is accomplished. To secure this, the statute requires that he shall make oath that he can do this, irrespective of any previous or existing opinion or impression. Not that this may be safely relied upon, on account of the difficulty of determining, by a person having an opinion or impression, how far he may be unconsciously influenced thereby, the statute goes further, and provides that the court shall be satisfied that the person proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror. Surely this latter provision, if rightly and intelligently administered by a competent court, will afford protection to the accused from injury from a partial jury. But the accused has not only this, but the further protection in his right, after challenge for principal cause has been overruled, again to challenge for favor, and have this tried and determined, uninfluenced by the decision made by the former challenge. While the constitution secures the right of trial by an impartial jury, the mode of procuring and impanelling such jury is regulated by law, either common

or statutory, principally the latter; and it is within the power of the legislature to make, from time to time, such changes in the law as it may deem expedient, *taking care to preserve the right of trial by an impartial jury.*"

From what is subsequently said in this opinion, we are led to believe that in the case of *Eason* v. *The State* a decision had been rendered upon the provisions of the Tennessee statute upon the same subject, to the effect that the juror should be competent if he stated on oath that upon the law and testimony on trial he believed he could give the accused a fair and impartial verdict. This statement was made conclusive of the question, and that the statute had been declared unconstitutional. We are not in possession of the reports containing this opinion, but, from what is said in *Stokes's Case*, felt authorized to allude, in the former part of this opinion, to the State of Tennessee as having, in this respect, attempted by legislation to impair the right of trial by jury as known at common law.

In 1860, the supreme judges in New Hampshire were called upon to answer these questions:

1. Has the legislature the power so to change the law in relation to juries, as to provide that petit juries may be composed of a less number than twelve?

2. Has the legislature power to provide that a number of the petit jury, less than the whole number, may render a verdict?

The questions were both answered in the negative.

In delivering the opinion, the court say: "We have considered these questions as of great importance and interest, since the trial by jury has been steadily regarded, from the earliest judicial history in England, as the great safeguard of the lives, liberty, and property of the subject against the abuses of arbitrary power, as well as against undue excitements of popular feeling. In our own country, almost from its earliest settlement, the trial by jury was claimed by the people as the birthright of Englishmen, and as the most valuable of the rights of freemen; and in the great struggle which secured our national independence, no right of the colonists was more urgently and strenuously insisted upon.

We have, therefore, examined these questions with anxious care, and we are without any disagreement among ourselves as to the conclusions we have formed, and which we now proceed to state in answer to those inquiries. We regard it as a well-settled and unquestioned rule of construction that the language used by the legislature, in the statutes enacted by them, and that used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the Constitution and the laws were adopted.

The terms "jury" and "trial by jury," are, and for ages have been, well known in the language of the law. They were used at the adoption of the constitution, and always, it is believed, before that time, and almost always since, in a single sense.

A jury for the trial of a cause was a body of twelve men, described as upright, well qualified and lawful men, disinterested and impartial, not of kin, nor personal dependents of either of the parties, having their homes within the jurisdictional limits of the court, drawn and selected by officers free from all bias in favor of or against either party, duly impaneled under the direction of a competent court, sworn to render a true verdict according to the law and the evidence given them, who, after hearing the parties and their evidence, and receiving the instructions of the court relative to the law involved in the trial, and deliberating, when necessary, apart from all extraneous influences, must return their unanimous verdict upon the issue submitted to them.

All the books of the law describe a trial jury substantially as we have stated it; and a "trial by jury" is a trial by such a body so constituted and conducted. So far as our knowledge extends, these expressions were used, at the adoption of the constitution, and always before, in these senses alone, by all classes of writers and speakers. (41 N. H. 550.)

The whole current and drift of the authorities in the United States are, without exception, to the same effect.

In addition to those quoted, we refer to the following:

*Work* v. *The State,* 2 Ohio State, 297; *People* v. *Bodine,* 1
Denio, 304; *Freeman* v. *The People,* 4 Denio, 34; *Wyneha-
mer* v. *The People,* 13 N. Y. 424; *Cancemi* v. *The People,* 16
N. Y. 504; *People* v. *Williams,* 6 Cal. 207; *Cooley* v. *The
State,* 38 Tex. 637; *Ingersoll* v. *Wilson,* 2 West Va. 59,
Burrill's Law Dictionary, title Challenge; Wharton's Law
Dictionary, title Challenge; U. S. Crim. Law (Lewis), 611;
Cooley's Constitutional Limitations, 319; 1 Bishop Cr. Pro-
cedure, 764, 768, 773, 774, 779, 781; *Flint River Steamboat
Company* v. *Foster,* 5 Ga. 195; *Staup* v. *The Commonwealth,*
74 Penn. State, 458.

All the decisions we have quoted from were delivered
without a single dissenting opinion. During our researches
we have been unable to find a single case in America holding
a contrary doctrine. No such case has been called to our
attention by counsel, and we are convinced that none can
be found.

We have so far been considering the questions submitted
to us with reference to the rights of the defendant only.
But there is another side to this subject well worthy of our
consideration. The state has certain rights as well as a
prisoner. The people need protection as well as the defend-
ant who is accused of crime. The right of trial by jury as
guaranteed by the constitution is as much for the protection
of the whole people as for the individual prisoner.

In Louisiana it is provided by statute that the method of
trial, and all proceedings in the prosecution of crimes
*changing what ought to be changed,* shall be according to the
common law unless otherwise ordered.

In *The State* v. *Bush,* the only point presented by the bill
of exceptions was the action of the court below in sustaining
a challenge for cause made by the state to a juror, who did
not understand the English language, but only German. It
was argued by the prisoner's counsel that the juror was a
qualified and registered voter, and as such a qualified juror;
there being a statute of the state to that effect. The court,
in deciding this question, say: "A challenge for cause may
exclude many jurors otherwise embraced in the general
terms of the law. Thus a qualified elector may be chal-

lenged *propter affectum,* by reason of some supposed relationship, bias or partiality, or previous formation and expression of opinion. A qualified elector may be challenged *propter defectum,* as if he be an idiot or lunatic. * * * This right to challenge for cause does not spring from any especial provision of law, but from the general rule that the method of trial shall be according to the common law. * * * Now a person who only understands German, and does not understand English, is no more capable of sitting as a juror * * * where the proceedings are conducted entirely in English, than if he were deaf and dumb. The accused might desire him, it is true; for such a juror would always be bound to acquit, inasmuch as he could never be satisfied beyond a reasonable doubt of the guilt of the accused; but this very desire, if founded on such a reason, is one that cannot properly be gratified. The state has some rights in a criminal court, and among them is certainly the right to have a jury composed of men who understand the language in which are conducted those proceedings by which, against the presumption of innocence, she seeks to establish a conviction of guilt." (23 La. Ann. 15.)

In *The Commonwealth* v. *Lesher,* the defendant was tried for murder, and when Isaac W. Morris was called as a juror, he declared that he had conscientious scruples on the subject of capital punishment, and that he would not, because he conscientiously could not, consent or agree to a verdict of murder in the first degree, death being the punishment, although the evidence should require such a verdict. The attorney for the commonwealth challenged the juror for cause and the challenge was allowed. Defendant having been convicted of manslaughter, appealed to the supreme court for a new trial and assigned this ruling of the court as error. The court say: "It seems to be admitted that the rules of the common law must govern our decision. Equally undisputed it appears to be, that in every criminal trial, without exception, there is precisely the same right of challenging a juror for cause given to the commonwealth or to the prosecutor, which is given to the defendant. The law guards against all the approaches of error and falsehood as much

on one side as on the other; and in challenges for cause, no distinction is admitted between bias and predetermination 'of a juror against a defendant, and bias and predetermination in favor of a defendant. The law, in every case, is scrupulous to prevent even the possibility of undue bias. It does not deal with a juror as with a witness: admit him though it doubts him. The slightest ground of prejudice is sufficient. The prejudice itself need not be made out; the probability of it is enough. One related, though by marriage only, * * * to the defendant or the prosecutor, may be challenged off the jury for that cause. Any one, who in any possible way, no matter how honestly, has been warped by any preconceived opinion which may affect his verdict, or has made up his mind what verdict he is to give, and declared it, is excluded. Nothing in the law can well be more extensive than this right of challenge *propter affectum.*" (17 Sergt. and Rawle, 156.)

Another case directly in point is found in Illinois. On the trial of the defendant for murder a juror stated on his *voir dire* that he had no conscientious scruples against finding a man guilty of an offense punishable with death, where the proof was positive, but no degree of circumstantial evidence would induce him to render such a verdict; that before he would find a verdict of guilty he should require the positive testimony of a witness who saw the crime committed. Another juror stated that he should be very reluctant to render a verdict of guilty, even if his judgment was convinced of the prisoner's guilt; he did not know but that he might be starved to render such a verdict, but thought he should hang the jury and thus defeat a verdict of guilty. The prosecution challenged both jurors for cause; the challenges were allowed, and this ruling was assigned as error on appeal. This was a case upon which the state relied entirely upon circumstantial evidence to establish the guilt of the defendant. Treat, C. J., in delivering the opinion of the court, said: "A juror ought to stand indifferent between the prosecution and the accused. He should be in a condition to find a verdict in accordance with the law and the evidence. * * * It would be but a mockery to go through

the forms of a trial with such a person upon the jury. The prisoner would not be convicted, however conclusive the proof of his guilt. Neither of these jurors was competent to try the case. Their minds were not in a condition to decide the issue according to the law and the evidence." (*Gates* v. *The People*, 14 Ill. 435.)

Numerous authorities might be cited to the same effect, but we deem it unnecessary to enter into any elaboration upon this branch of the case, and have only referred to it for the purpose of showing that the principles of the common law, which it is conceded must govern and control our decision, apply as well for the protection of the state as for the prisoner; a proposition which, at this late day, we apprehend will not be questioned.

Another feature of the right of trial by jury as guaranteed by the Constitution is deserving, in this connection, of a brief notice. This provision applies to civil as well as criminal cases. Now, while this is true, we do not think it will be questioned but what it was primarily intended to protect inviolate the trial by jury in criminal cases; nor will it be denied that courts should ever watch with more jealousy any departure from, or infringement upon, trial by jury in criminal cases, where the life or liberty of a citizen is at stake, than in the trial of civil cases, where the rights of property are alone involved.

In the *Chicago & Alton R. R. Co.* v. *Adler*, which was an action brought by Adler, as plaintiff, against the railroad company, defendant, to recover a penalty for the failure to ring a bell or sound a whistle at the crossing of a highway with its engine and trains, four of the jurors on their *voir dire* stated that if the evidence was evenly balanced they would lean against the defendant. Now, it will be observed that in this case no other prejudice existed against the defendant. It does not appear that either of the jurors had heard the facts of the case, or had formed or expressed any opinion whatever upon the merits. But if the testimony was evenly balanced they did declare that they should find a verdict in favor of the plaintiff. Justice Walker, who delivered the opinion of the court, in deciding the question of the competency of the four jurors, who, after their expres-

sion of opinion, were permitted, against the defendant's objection, to act as jurors, said: "It is a fundamental principle, that every litigant has the right to be tried by an impartial and disinterested tribunal. Bias or prejudice has always been regarded as rendering jurymen incompetent. And when a juror avows that one litigant should have any other than the advantage which the law and the evidence give him, he declares his incompetency to decide the case. He thereby proclaims that he is so far partial as to be unable to do justice between litigants, or that he is so far uninformed, and his sense of right is so blunt, that he cannot perceive justice, or, perceiving it, is unwilling to be governed by it. The rule is so plain and manifest that the party claiming to recover must prove his cause of action, it is a matter of surprise that an adult can be found who would not know that such is the common sense as well as the common honesty of the rule. No ordinary business man would be willing that a claim pressed against him should be allowed, and he be compelled to pay it, when the evidence for and against the claim was evenly balanced. * * Nor does the fact that jurors, who avow, under oath, that they would incline to favor a recovery by the plaintiff on evidence evenly balanced, declare that they are impartial, in the slightest degree tend to prove their impartiality. Their statement only tends to prove that they are so far lost to a sense of justice, that they regard what all right-thinking men know to be wrong, as just and impartial. To try a cause by such a jury is to authorize men who state that they will lean, in their finding, against one of the parties, unjustly to determine the rights of others, and it would be no difficult task to predict, even before the evidence was heard, the verdict that would be rendered. Nor can it be said that instructions from the court would correct the bias of jurors who swear that they incline in favor of one of the litigants. In suits for the recovery of penalties, the law does not warrant a recovery, unless the proof clearly preponderates in favor of the plaintiff. And to admit jurymen, who avow that they will not even require a preponderance, would be to violate the rule." (56 Ill. 346.)

The necessity of strictly observing the policy of the common law requiring twelve impartial and competent jurors to try civil actions was learnedly discussed by Garber, J., in the case of *Sacramento and Meredith Mining Co.* v. *Showers* (6 Nev. 291).

From this review of the authorities it will be seen that the great purpose of the right to challenge a juror for principal cause, and to the favor, is to secure the defendant and the state a fair and impartial jury. It will also be noticed that in many of the cases we have cited, questions arose that were not covered by any of the illustrations referred to by writers on the common law, or found in the statutes regulating this subject. Whenever this condition of affairs existed the courts have universally applied the general principles of the common law, and any prejudice, state of feeling, or condition of mind, that would make the juror partial to one side or the other, has always been considered a good ground of challenge. In these cases it has been said to be one of the excellencies of the common law, that it admits of perpetual improvement by accommodating itself to the circumstances of every age, and applies to all changes in the modes and habits of society; that it will never be outgrown by any refinements, and never out of fashion while the ideality of human nature exists. It is a law which deals in things more than in names, and under its wise and beneficent rules no contrivance or means of any kind whatever will ever be made effectual to select a jury for the purpose of destroying the innocent or screening the guilty.

Now, it does not follow from anything we have said, or from any of the opinions we have quoted, that the mere fact that the juror has formed or expressed an opinion upon the guilt or innocence of the defendant necessarily renders him an incompetent juror. As matter of fact, it is well known that in this enlightened age, where railroads, post-offices and the telegraph open up every avenue of communication, and where every man reads, or ought to read, the newspapers containing the current news and events of the day, a man may have formed and expressed an opinion that defendant is guilty or innocent from what he has read in the

daily papers, or heard from idle rumor on the street, or partial statements gleaned from casual conversations with witnesses or other persons, may nevertheless be a competent juror, and might, upon a full hearing of the case from the testimony delivered under oath in a court of justice, be fully prepared to render an impartial verdict according to the law and the evidence.

As the effect of our decision will be to leave in full force the sections of the law of 1861, which the act under consideration attempted to amend and repeal, and as it is there provided that a juror may be challenged for implied bias for having formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged, it is unnecessary to decide what expression of opinion would actually disqualify a juror. In fact, much must always be left to individual cases as they arise. The decisions of courts upon this point are by no means uniform. There is a great diversity of opinion among the various judges in the different states, some holding that a juror's mind must be like a blank sheet of paper, having no knowledge or opinion whatever in regard to the guilt or innocence of the defendant. We do not concur in such extreme views, nor do we find that the law demands any such rule. All laws are said to be founded in reason, and we must take a common sense view of these questions whenever they are properly presented. We think the New York statute goes as far in regulating this subject as the limits of the constitution permit, and it is well here to state that in the decision in *Stokes's Case,* declaring that law constitutional, two of the judges expressed no opinion. When not regulated by statutory provisions we think that whenever the opinion of the juror has been formed upon hearing the evidence at a former trial, or at the preliminary examination before a committing magistrate, or from any cause has been so deliberately entertained that it has become a fixed and settled belief of the prisoner's guilt or innocence, it would be wrong to receive him. In either event, in deciding these questions, courts should ever remember that the infirmities of human nature are such that opinions once deliberately

formed and expressed cannot easily be erased, and that prejudices openly avowed cannot readily be eradicated from the mind. Hence, whenever it appears to the satisfaction of the court that the bias of the juror, actual or implied, is so strong that it cannot easily be shaken off, neither the prisoner nor the state ought to be subjected to the chance of conviction or acquittal it necessarily begets. But whenever the court is satisfied that the opinions of the juror were founded on newspaper reports and casual conversations which the juror feels conscious he can readily dismiss, and where he has no deliberate and fixed opinion, or personal prejudice or bias, in favor of or against the defendant, he ought not to be excluded. The sum and substance of this whole question is, that a juror must come to the trial with a mind uncommitted, and be prepared to weigh the evidence in impartial scales and a true verdict render according to the law and the evidence.

We acknowledge the justice and force of the argument made by the attorney-general, that when there is any doubt upon the constitutionality of a law it ought to be sustained. This rule has been frequently announced and steadily adhered to by this court. But no lawyer, in our judgment, after an examination of the authorities, can have any doubt whatever as to the unconstitutionality of the act under consideration. However unpleasant it may be to declare an act of the legislature void, our duty is plain. The man may feel, but the judge must act. Upon a review of the facts and law of this case, our deliberate conviction is that the defendant has been deprived of the right of trial by a jury of twelve competent and impartial men as guaranteed to every citizen by the provisions of the constitution.

The judgment of the district court is reversed and the cause remanded for a new trial.

By BEATTY, J., concurring:

I concur in the judgment and in the opinion to this extent. I am satisfied that the right of trial by jury secured by the constitution embraces the right to an impartial jury; and that this law, depriving the defendant of the right to

challenge for actual bias, is for that reason unconstitutional; and as its various provisions are so inseparably dependent that none can stand alone, except sections 8 and 9, which embrace different subjects, it must be wholly set aside except as to those sections, leaving the old law in force in all other particulars. Upon the other points discussed I express no opinion.