TERRITORY, respondent, vs. AH WAH and AH YEN, appellants.

JURY — *Indispensable number in trial of felonies* — *No waiver by consent.*— In the trial of all felonies, more especially of capital offenses, a jury of twelve men, neither more or less, is an indispensable requirement of the law. It is not a privilege that can be waived either by prosecutor or defendant, or allowed by court.

A trial of such a cause before a jury of eleven men, though with consent of defendants, is a nullity, and any judgment thereon without jurisdiction and void.

*Appeal from First District, Madison County.*

HENRY N. BLAKE and JAMES E. CALLAWAY, for appellants.

1. The grand jury by whom the indictment was found did not have jurisdiction to inquire into the offense charged. The transcript on appeal shows these facts:

(*a*) The appellants, on the first day of the March term, 1881, were in the county jail to answer the charge of murder in the first degree. They were brought into court, duly notified of their rights, and waived all objections to the grand jury. This grand jury was duly impaneled, sworn and charged, and, after inquiring into this charge, made a report in writing and failed to return a true bill against appellants.

(*b*) Afterwards, another grand jury was summoned at the same term of court, and returned the indictment against appellants.

(*c*) The appellants interposed their challenge to the panel of the second grand jury, which was overruled, and appellants excepted to the action of the court thereon.

(*d*) The appellants made a motion in arrest of judgment on the ground that said special grand jury had no legal authority to inquire into the charge against them. This motion was overruled and appellants excepted.

Appellants claim that, under the statutes of this terri-

tory, the first was the regular grand jury and had jurisdiction of the offense charged against them. Appellants duly waived in open court all objections to the members or panel of said grand jury. When the first grand jury failed to find an indictment, appellants were entitled to their discharge, and no grand jury could inquire into said charge until the succeeding term of the district court. The statutes of this territory are similar to those of California in this respect, and contemplate one regular grand jury for each term of the district court. When cases are not cognizable by such grand jury, another grand jury can be impaneled to inquire into them. The second grand jury could consider any offense "discovered or committed during the sitting of the district court, or a charge which the first or regular grand jury was not competent to investigate." The statute, by this limitation upon the jurisdiction of the second grand jury, excludes all other cases. *Expressio unius est exclusio alterius.*

Appellants were not embraced within these classes, and, therefore, the second grand jury had no legal authority to find the indictment against them. R. S. Mont. p. 393, sec. 141; *People* v. *Monahan*, 32 Cal. 72; *People* v. *Southwell*, 46 Cal. 153; *Mousseau* v. *Veeder*, 2 Oregon, 113.

2. The court erred in refusing to allow A. J. Bennett, the foreman of the first grand jury, to testify concerning the evidence of the witness Ong Soon before that grand jury. The transcript shows that the testimony of Ong Soon, on the trial, was very strong against appellants. Appellants sought to affect the credibility of this witness and the weight of his testimony by proving that his testimony before the grand jury was different from that given before the trial jury. The testimony of Bennett was material to appellants. The objection thereto by the territory is general. In *Shober* v. *Jack*, 3 Mont. 356, this court says: "When a party objects to a witness as

incompetent he should show wherein he is not competent. It is never presumed that a witness is incompetent."

In *Roper* v. *McFadden*, 48 Cal. 346, it is held that it is not error to admit irrelevant testimony, if no objection is made that it is irrelevant.

In *People* v. *Manning*, 48 Cal. 335, the court says: "A party objecting to the admission of evidence must specify the ground of his objection when the evidence is offered, and will be considered as having waived all objections not so specified."

While appellants insist that such an objection cannot be entitled to any weight on account of its vague and informal character, we maintain that Bennett was a competent witness under the laws of this territory and decisions under similar statutes.

"Members of the grand jury may be required by any court to testify whether the testimony of a witness, examined before such grand jury, is consistent with *or different from the answers* given by such witness before such court." R. S. p. 391, secs. 128, 130; *Commonwealth* v. *Hill*, 11 Cush. 137; *Commonwealth* v. *Mead*, 167–170. Grand jurors in this territory are not sworn to secrecy. R. S. p. 390, sec. 126; 1 Bishop's Cr. Pr. (1st ed.) secs. 729, 730; *Perkins* v. *State*, 4 Ind. 222; *Burnham* v. *Hatfield*, 5 Blackf. 21; *State* v. *Broughton*, 7 Ired. 96; *Sands* v. *Robison*, 12 Sm. & M. (Miss.) 704; 1 Whart. Cr. Law, secs. 508–512; *State* v. *Wood*, 53 N. H. 484; *Jones* v. *Turpin*, 6 Heisk. (Tenn.) 181; *People* v. *Young*, 31 Cal. 563; *State* v. *Brewer*, 8 Mo. 338; *United States* v. *Porter*, 2 Cranch C. C. 60; *United States* v. *Charles*, id. 76. Mr. Bishop says: "Here is a strong current of American decisions, all setting one way." 1 Cr. Prac. sec. 729, n. 4.

3. In this connection, appellants call attention to the principle that when the evidence in a criminal case is not plainly inadmissible, the better practice is to let it go in without objection. *People* v. *Williams*, 18 Cal. 187;

*People* v. *Devine,* 44 Cal. 452; *People* v. *Benson,* 52 Cal. 380.

4. The court erred in not giving to the jury the second instruction asked for by appellants. It is held in some states that, under similar circumstances, the presumption is that the crime constitutes murder in the second degree, but we know of no cases holding that there would be a presumption that the crime was murder in the first degree. 2 Bishop Cr. Pr. (1st ed.) sec. 606; *State* v. *Turner,* Wright (Ohio), 20; *People* v. *Ah Fung,* 16 Cal. 137; *People* v. *Gibson,* 17 Cal. 283; *People* v. *Belencia,* 21 Cal. 543; *Milton* v. *State,* 6 Neb. 136; *Cathcart* v. *Commonwealth,* 1 Wright (Pa.), 108; *McCue* v. *Commonwealth,* 78 Pa. St. 185; *State* v. *Holmes,* 54 Mo. 153; *State* v. *Underwood,* 57 Mo. 40; *Hill* v. *Commonwealth,* 2 Gratt. (Va.) 594.

5. The court erred in refusing to give to the jury the third instruction asked for by appellants. An intent to murder cannot be conclusively inferred from the mere use of a deadly weapon. *State* v. *Newton,* 4 Nev. 412; *Thomas* v. *People,* 67 N. Y. 224–5.

6. The court erred in giving to the jury the eighth instruction. A juror has not the legal right to believe a part of the testimony, and disbelieve a part thereof, according to his judgment or discretion. The instructions should have been qualified by stating that this judgment or discretion must be exercised upon a consideration of all the facts and circumstances of the case, or that jurors must have sufficient grounds for action, or belief or unbelief. *People* v. *Strong,* 30 Cal. 151–158; 1 Greenl. Ev. sec. 218. A witness is presumed to speak the truth, and the statute shows how this presumption may be repelled. R. S. p. 168, sec. 601.

7. The instruction numbered 9½ was ambiguous, and tended to mislead the jury, and was in conflict with the first clause of the eighth instruction.

In *Territory* v. *Owings,* 3 Mont. 139, this court says:

"But where the instructions set up for the jury contradictory rules for their guidance, which are unexplained, and following either of which might or would lead to different results, then the instructions are inherently defective and calculated to confuse and mislead the jury."

The jury are the exclusive judges of the weight of the evidence, and the court erred in this instruction, that one class of witnesses "is entitled to far greater weight in the minds of the jury" than another. The court thereby passed upon the weight of the evidence, and usurped the province of the jury. The transcript shows that some witnesses for appellants testified that they did not see certain witnesses for the territory at the place where they claimed to have been, and also that they did not see appellants stab or strike the deceased. The weight of this testimony for appellants was destroyed by this instruction, and appellants were prejudiced thereby.

In *People* v. *Williams*, 17 Cal. 147, the court says: "A judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts."

In *State* v. *Van Winkle*, 6 Nev. 340, it was held error for the court to instruct the jury that "circumstantial evidence is more satisfactory than the testimony of a single individual who swears he has seen a fact committed."

The court held that this instruction in effect decided a question of fact and not a rule of law. *People* v. *Eckert*, 16 Cal. 110; *People* v. *Barry*, 31 Cal. 357; *People* v. *Dick*, 32 Cal. 213; *McNeil* v. *Barney*, 51 Cal. 603.

8. The thirteenth instruction is a copy of section 40, page 469, Revised Statutes of the territory, without any explanation or qualification. It is ambiguous and misleading, and therefore erroneous. The court should have stated the presumption, if the killing *by appellants or either of them* was established. The two appellants were

on trial. The proof of the killing by one appellant would not put the other upon his defense. The fact of the killing alone, without proof that it was effected by appellants, would not devolve on appellants the burden of establishing any facts. Appellants were prejudiced by the ambiguity of this instruction. In *State* v. *McGinnis*, 5 Nev. 337, Lewis, C. J., says: "In a criminal case, any ambiguity which may have a tendency to mislead the jury should entitle the prisoner to a new trial." *People* v. *Maxwell*, 24 Cal. 14; *People* v. *Murphy*, 29 Cal. 103; *State* v. *Van Winkle*, 6 Nev. 340; *Ritte* v. *Commonwealth*, 18 B. Mon. 35.

9. The fourteenth instruction was erroneous because the indictment did not charge that Ah Yen, one of the appellants, stood by and aided, abetted or assisted Ah Wah, the other appellant. The statutes of this territory are similar to those of California and Nevada, which require an indictment to contain "a statement of the facts constituting the offense." R. S. p. 397, sec. 164. The law concerning accessories is the same. R. S. p. 399, secs. 176, 177; also p. 463, sec. 12. Ah Yen could not be convicted under the evidence of any offense within the indictment. 1 Bishop Cr. Pr. (1st ed.) sec. 547, n. 1; *State* v. *Chapman*, 6 Nev. 320, 331; *People* v. *Schwentz*, 32 Cal. 160, 164; *People* v. *Trim*, 39 Cal. 75; *People* v. *Campbell*, 40 Cal. 129; *People* v. *McGungill*, 41 Cal. 429; *Walrath* v. *State*, 8 Neb. 80; *Shannon* v. *People*, 5 Mich. 71; Wharton on Homicide, 156, 157.

10. The fifteenth instruction withdrew from the consideration of the jury a large part of the testimony. The transcript shows that the evidence had been offered by both parties and received without objection; that witnesses had been examined and cross-examined thereon; and that no motion to strike out the same had been made. Under such circumstances, evidence cannot be withdrawn from the jury unless all the parties consent thereto. The testimony so excluded affected the credibility of wit-

nesses for the territory and appellants were injured by this instruction.

In *People* v. *Long*, 43 Cal. 444, Wallace, C. J., says: "The practice, whether in civil or criminal cases, of deliberately permitting evidence to be given without objection in the first instance, and then moving to strike it out on grounds which might readily have been availed of to exclude it when offered, is not to be tolerated."

By the cross-examination of a witness, the party waives the motion to strike out his testimony. In this case the court did by its instruction what the parties could not do by a motion to strike out. *Sharon* v. *Minnock*, 6 Nev. 377; *Brooks* v. *Crosby*, 22 Cal. 42; *Davis* v. *Davis*, 26 Cal. 23; *Curiac* v. *Packard*, 29 Cal. 194; *Janson* v. *Brooks*, 29 Cal. 214; *King* v. *Haney*, 46 Cal. 560; *Lovering* v. *Langley*, 8 Minn. 107; *Donelson* v. *Taylor*, 8 Pick. 390.

11. The nineteenth instruction was erroneous, because it stated in substance that the evidence of an *alibi*, to prevail, must cover the whole time of the alleged offense. *State* v. *Waterman*, 1 Nev. 543; *Adams* v. *State*, 42 Ind. 373; *Kaufman* v. *State*, 49 Ind. 248; *State* v. *Henry*, 48 Ind. 403; *State* v. *Northrup*, id. 583; *State* v. *Jaynes*, 78 N. C. 504; *Davis* v. *State*, 5 Baxter (Tenn.), 612; *Wiley* v. *State*, id. 662.

12. The transcript shows that Michael A. Halfield, one of the trial jurors, was excused during the trial, and that the verdict was returned by eleven jurors who remained in the panel. The verdict was void and the court could not render judgment thereon. The consent of appellants could not confer jurisdiction on the court, or cure the verdict. A trial by jury is a trial by twelve men acting with unanimity. Upon these propositions the authorities are uniform. *Kleinschmidt* v. *Dunphy*, 1 Mont. 118; *Cancemi* v. *People*, 18 N. Y. 128; *People* v. *O'Neil*, 48 Cal. 258, and cases cited. The attorney-general confessed the error. *Brown* v. *State*, 6 Blackf. 451; *S. C.* 16 Ind. 496; 1 Bishop Cr. Pr. sec. 761; *State* v. *McClear*,

11 Nev. 39, 60; *State* v. *Mansfield*, 41 Mo. 470; *Hill* v. *People*, 16 Mich. 354; *Bell* v. *State*, 44 Ala.. 393.

13. There was no evidence to support a verdict against Ah Yen. The deceased received one wound only, and this was mortal. Ah Yen said nothing and did nothing before the deceased received the mortal wound. No conspiracy between the appellants was shown. The mere presence of Ah Yen did not make him an aider or abetter. *People* v. *Leith*, 52 Cal. 251; *White* v. *People*, 81 Ill. 333; *Connaughty* v. *State*, 1 Wis. 159; *Butler* v. *Commonwealth*, 2 Durell (Ky.), 435.

14. For the reasons given, the motions for a new trial and in arrest of judgment should have been sustained.

In *Nevada* v. *Van Winkle*, 6 Nev. 346, the court says: "Error being shown, the burden of establishing its immateriality is on the state, and in criminal cases the showing of immateriality must be conclusive."

E. W. TOOLE, for respondent.

1st. The real questions to be determined upon appellants' challenge to the panel of the grand jury, finding the indictment upon which the trial and conviction were had, are: 1st. Was it legally impaneled? 2d. Did it have authority to inquire into the offense charged? Upon the first proposition, we submit that sec. 141, page 393, does not in any manner attempt to limit the powers of the grand jury, but only defines the events or emergencies upon which a new grand jury can be impaneled. It places no restriction or limitation upon its powers when once formed. In the absence of this, its powers would be such as are delegated generally to a grand jury.

But to set this question at rest, by section 142 the mode of summoning such new grand jury is specifically pointed out, while its power when so summoned and impaneled is expressly defined by law. Sec. 143.

The maxim quoted, "*Expressio unius est exclusio alterius*," is improperly applied by appellants. If we apply

it to the causes or grounds upon which a new grand jury may be impaneled, it will be seen from section 141 and the order of the court that this maxim is fully observed. If applied to sec. 143 and the indictment upon which the conviction was had, it will be found that this maxim has in no wise been violated. The grounds existed for forming the jury, and the offense was one cognizable by it when once impaneled.

It would be tacitly implied by section 141 that the grand jury "could inquire into, and it is their duty to inquire into, all public offenses committed or triable within the jurisdiction of this court and to present them to the court by indictment;" but by section 143 it is expressly so provided, and under the maxim "*Expressum facit cessare tacitum*," we can ignore that which would otherwise have been implied. We can safely stand upon the maxim quoted by appellant and the express provisions of the statute. The case of appellants is embraced within it. The former grand jury had not ignored an indictment against them, and the one upon which they were tried was in strict conformity with the statute. If an offense was committed during the sitting of the court and after the regular grand jury had been discharged, the new grand jury was properly formed, and sec. 143 in direct terms empowered it to find the indictment in this case. See order of court, record, page 3. In this view of the case, the authorities cited by appellant are inapplicable.

2d. The point sought to be made by appellants touching the generality of the objection of respondent to the proffered testimony of Bennett, foreman of the grand jury, would be good law and the authorities cited applicable if the court had overruled the objection and the objecting party had excepted. In that case he should point out the particular grounds of his objection. But when the objection is sustained, and for any reason the evidence offered is incompetent, the ruling is proper, and no injury

is sustained.    To this extent, and no further, do the authorities go.

Appellants have failed by their exception to show that the evidence offered was competent.    They must show error, otherwise the ruling of the court will be sustained. The statute in reference to the testimony of the grand jurors goes to the question of their *competency alone.*    All the other rules as to the competency of the evidence, and especially as to its admissibility, are applicable.    It nowhere appears that the witness sought to be impeached was inquired of as to his evidence before the grand jury. *He was not interrogated as to whether he did not testify* to certain facts so as to lay the foundation for his impeachment.

Sec. 128 in no way abrogates the general rules as to the admissibility of evidence in any respect, save that the grand juror and his testimony is competent, if in other respects the foundation for its admission is properly laid. He stands in this respect as any other witness.    Besides, the section provides that "the *grand juror* may be required by any court to testify whether the testimony of a witness examined before *such grand jury* is *consistent with* or different from the answers given by such witness before such court."    The question propounded was, "What did said Ong Soon testify to before said grand jury concerning the killing of Ah Sue?"

We submit, 1st.    That it is for the *witness (i. e., grand juror)* to testify whether the testimony of the witness before the court is consistent with or different from that given before the grand jury.    To give the evidence would leave it to the trial jury to determine this fact, while the mode of impeachment expressly provided by the statute makes it the province of the grand juror himself to "testify whether the testimony given before the grand jury was consistent with or different from that given before the court."    He alone, under the law, is to judge of this, and his statement in that behalf is

the evidence to go before the trial jury. No such evidence was offered. Again, he does not state that he remembers any of the witness' testimony before the grand jury, and did not hear his evidence before the court. How, then, could he testify whether such evidence was consistent with or different from that given before the grand jury? Yet this is exactly what the statute says he may be required to testify to, and "*expressio unius est exclusio alterius.*" Besides, the grand juror states that he took minutes of the evidence before them, that he did not have those minutes with him, and does not state that he is able to testify without them. The grand juror on the stand was not present, and did not hear the evidence of the witness to be impeached; was not even told what he had testified to so as to enable him to swear *whether* such evidence was *consistent* with or different from that given before the grand jury. When a grand juror is a witness in this particular, he is made an expert, so to speak. As a member of one branch of the court, the grand juror is made the *person* to say whether the evidence given before the trial jury corresponds to *that* given before the grand jury, and not the panel jury. Under the theory of appellants, admitting that the foundation for the evidence was properly laid, and that the grand juror had shown himself possessed of sufficient knowledge to' testify as to the matters inquired of, the trial-jury are made the judges as to whether the evidence given before them was consistent with or·different from that given before the grand jury, instead of the grand juror who heard the evidence before that body, and is presumed to have heard it before the court. This is not the law, and is directly inconsistent with the theory upon which such evidence is admissible under sec. 128, above quoted.

Sec. 128 defines what it is lawful for a member of the grand jury to testify to, and sec. 130 must be construed with reference thereto. The language of this section is:

"No grand juror shall disclose any evidence given before
the grand jury, . . . except when *lawfully* required
to testify as a witness in reference thereto." Sec. 128
provides when such grand juror may be lawfully required
to testify and to what he may be required to testify,
*i. e.,* "whether such testimony given before the grand
jury was consistent with or different from that given by
the witness before the trial court. The two sections con-
strued together seem to us to be conclusive of the ques-
tion. The law nowhere provides that a member of the
grand jury may be required to give evidence of the facts
testified to by a witness before that body, and yet this is
just what the interrogatory propounded sought to elicit
from the witness Bennett.

3d. The third point made by appellant, that in cases
where the court is in doubt as to the admissibility of evi-
dence in a criminal case, that it is better to admit such
evidence, is a rule peculiarly applicable to the court below.
But when an appeal is taken and the judgment of the
court below sought to be reversed on account of the re-
fusal to admit evidence, it devolves upon the appellant
to show error. The appellate court must determine these
questions and make certain by its decisions that which
was before doubtful. It must be settled then like any
other legal proposition; and although it may signify by
its decision the better course to be pursued by the court
below in case where that court is in doubt, we have yet
to find a decision of a supervisory court where it has ex-
pressed its doubt upon such a question, and thereupon
reversed the judgment appealed from. In expressing
doubt in such matters it would seem to us to be its prov-
ince to pass its best judgment upon the question pre-
sented. In this way alone can such uncertainties be
settled and the law pronounced. It would seem a re-
markable course for an appellate court not to pass upon
these questions according to legal principles, reverse a
case, and establish a precedent contrary to its best judg-

ment. It would become an adherent to what was not law, instead of an exponent of what was law. Counsel would say, don't take the side you believe to be right for fear you will be wrong.

The cases referred to are simply suggestions to prosecuting attorneys, that in case of doubt it is best to permit evidence to go to the jury *without objection.* But here the objection is made, exception taken, and the question of its admissibility directly presented. The ruling is presumed to be correct. *Moore* v. *Massini,* 43 Cal. 389. The court by its order, made a part of appellants' bill of exceptions, shows that the former grand jury was an incompetent one to inquire into the case. Hence all the objections upon that point are unavailable. It shows that no competent grand jury had existed to ignore any indictment. See Record, p. 3.

4th. As to the fourth point made by appellants, the proposition referred to (if correct law) was fully covered by other parts of the charge. See *Territory* v. *McAndrews,* 3 Mont. 164. Besides, the instruction offered is unintelligible, apparently intending to present an *abstract proposition of law,* leaving out of it an important element, in this: The law raises no presumption unless the killing was with a deadly weapon, in the absence of facts showing the circumstances of the killing. The court in its charge told the jury in substance that the killing must be shown to have been done in *manner* and *form,* and at the time and place alleged in the indictment, in order to convict defendants of murder in the first degree. This was in effect the instruction offered by appellant. It directed the jury that unless it was shown that the accused with a deadly weapon, wilfully, deliberately and premeditatedly, and of his malice aforethought, killed the deceased at the time and place charged, they could not find defendants guilty of murder in the first degree. This enunciated the principle intended by the second instruction offered by the appellants, in stronger and

more favorable terms for the accused. The whole charge must be taken together, and if it correctly presents the law as a whole, the court will not reverse the case. *State* v. *Prichards*, 15 Nev. 74. And so this court has frequently held.

The same is true of the third instruction offered; the word "bare" before the word "use" being left out, destroys the legal principle intended to be presented. The killing with a deadly weapon, in the absence of this word, may or may not be murder in the first degree, according to the circumstances of the particular case. It would therefore be error to say that from the use of a deadly weapon it cannot be conclusively presumed that the crime was murder, unless it be added in the absence of any evidence of the manner and circumstances under which it was used, or limited by the phraseology above suggested, *i. e.*, "the *bare* use," etc. But the court told the jury, not only that they could not convict of murder under the circumstances suggested, but that, in order to do so, it must be established on the part of the prosecution, beyond a reasonable doubt, that the killing was with a deadly weapon, and wilfully, deliberately and premeditatedly done, without provocation, etc.

6th. The authorities cited do not support the objection urged to the eighth instruction. The court properly told the jury that they were the exclusive judges of the weight of evidence and credibility of the witnesses, and that they were at liberty to believe or disbelieve so much of the evidence as *commends* itself to their *judgment* and *conscience*. In other parts of the charge they are told that a conviction, if had at all, must be upon the evidence beyond a reasonable doubt. The former part of sec. 601, p. 168, Codified Statutes, in defining what may repel the presumptions of the truth of the statements of a witness, neither adds to or detracts from the latter part of the section, which provides, in general terms, that "the jury are the exclusive judges of his credibility." It,

in substance, tells the jury that they cannot arbitrarily discredit and disregard the evidence of a witness, but that it must be done upon grounds that *commend* themselves to their *judgment* and *conscience.* There must be something for the judgment and conscience to act upon, it is true; but where the jury are the exclusive judges of the credibility of the witness, the court would never assume to direct them as to what facts, circumstances or reasons should be considered in connection with the exercise of this *judgment* and *conscience.* The court fully exercised its province in directing the jury as to what evidence was competent, leaving it to the judgment of the jury to determine as to its weight and the credibility to be given to the witnesses.

7th. The defendants could not be prejudiced by the ninth and a half instruction complained of. The jury had been fully instructed that they were the exclusive judges of the weight of the evidence. This instruction only attempts to define the character or grade of the testimony. The court could tell the jury what was primary or secondary evidence. It could tell the jury that a witness clearly impeached, in their opinion, was not entitled to the same weight as a truthful and credible witness, or that a person who testified to a fact the existence of which it was a physical impossibility for him to know, was not entitled to the same credit as one having the means of information and testifying therefrom. It only says to the jury that one who knows a thing, who is truthful and credible, and testifies about it, is entitled to more weight than one that does not. The use of the words truthful and credible in such cases embodies the only element to which the question of weight of evidence could apply, and this is left to their judgment. The other is an axiom.

The only grounds upon which a jury could weigh the evidence of one that knew whereof he spoke, and one that did not, would be upon the basis of their credibility. If A. should testify that he walked from Helena to Wash-

ington city in a day, and the other evidence showed to the jury that it was *three thousand* miles from one place to the other, of which fact the jury were satisfied, it would be no error in the court directing the jury that, when a man testified to an impossibility, it was not entitled to equal weight with that of a truthful man testifying to possibilities. This is not directing the jury as to the weight of evidence in the sense used in the statute. It is simply telling the jury that a certain class of evidence is better than another. The use of the word "weight" must be taken in its proper connection in construing its import, in order to see whether it is used in violation of the sense of the statute. It must mean the weight of evidence of a similar grade or character, leaving to the court to direct as to the force to be given certain grades or character of evidence, comparatively speaking. In the very nature of things no injury could occur.

8th. The eighth error assigned in appellants' brief is given in the language of the statute. It is applicable to the case, is not ambiguous or uncertain, and, when taken in connection with the instructions as a whole, could not be misinterpreted or mislead the jury. The instructions tell the jury in plain terms that if the killing was done by one under such circumstances as constituted the crime of murder, the other could not be convicted, except upon evidence beyond a reasonable doubt that the other was present, aiding, abetting, etc.

9th. The fourteenth instruction was correct. Our statute (sec. 176, p. 399) provides for the indictment, trial and conviction of the accused as a principal. The authorities cited are not applicable to the case at bar. The indictment was good, no objection was made to the evidence, and the instruction was based upon it.

10th. The evidence excluded by the fifteenth instruction was utterly incompetent and properly withdrawn from the jury. The objections and exceptions taken by respondents were not properly a part of the record in the

case. This being so, it would devolve upon the appellants to show *affirmatively that no such objections* or exceptions were taken, if there was anything in the point. The presumptions are that such were the facts; and unless it was necessarily and properly a part of the record in the case, the record should show affirmatively, and plaintiff's bill of exceptions set out specifically, that such evidence was admitted by both parties without objection. Had appellants sought to do this, the court would not have allowed such statement, because incorrect. To assume, in the absence of an affirmative showing that the evidence was admitted without objection, *if appellants' position* is correct, would *presume* error, which is never the case. The objections or want of objections of respondent are not properly in this record, unless incorporated in it by appellant by bill of exceptions, to rebut the presumptions that the rulings of the court were legal and proper. It cannot be said that the presumptions that the proceedings of the court below were correct, are overcome by the want of the appearance of something in the record that is not required to be in it. See *Seaward* v. *Malotte,* 15 Cal. 304; *People* v. *Best,* 39 Cal. 690; *Moore* v. *Massini,* 43 Cal. 389.

11th. The court gave the instruction with reference to an *alibi* more favorable to defendants than the authorities cited by appellants require. The generation of a reasonable doubt, under the instructions of the court, was as fatal to a conviction as a total failure of proof. The court, in this instruction, told the jury if the absence of defendant did not cover the time of the commission of the offense, it could be considered as to raise a reasonable doubt, and expressly in its charge instructed the jury that, in the event of such doubt, they should acquit.

12th. There was evidence to support the verdict of the jury, and upon it the jury found that the accused were guilty beyond a reasonable doubt. The indictment charged both with murder; the same evidence against

both was admitted without objection under it, and the instructions were based upon and applicable to the evidence in the case.

We submit that upon all the foregoing propositions there is no error shown. That in no instance can it be said that the rights of the accused have been prejudiced. The instructions, taken as a whole, present the law favorably to defendants, and they have no cause of complaint in that respect.

13th. The remaining proposition is one involving constitutional questions of grave importance to the state and citizen, and should be solved and settled upon principles applicable to the interpretation of that instrument. The right of the defendant in case of felony to waive a constitutional jury and try his cause with a less number, is a more serious question, and about which courts of equal respectability differ; but when the question is considered in the light of reason and analogy, it seems to us that the right exists, though it must be admitted that the authorities, numerically considered, are against the proposition.

The case of *Dunphy* v. *Kleinschmidt,* 1 Mont. 118, cited by appellant, does not support the proposition; that was a question whether the legislature could legislate away a right of a party against his consent; and the case of *The State* v. *McClean,* 11 Nev. 39, 60, is to the same point; but the question here is one of *consent* or waiver.

The case of *People* v. *O'Neil,* 48 Cal. 258, was a case similar to the one at bar, but it appears from the opinion that the question was not considered upon the authorities, but, the error being confessed by the attorney general, the point was sustained by the court.

The case of *The People* v. *Cancemi,* 18 N. Y. 128, meets the question squarely, and decides the point against us. The question, however, was a new one then, and the court was not furnished with an authority pro or con.

The other authorities cited by appellants have not

.come to our hands, and no examination has been made of them.

The latest judicial determination of this question was had in 1879, by the supreme court of Iowa, in the case of *The State* v. *Kaufman,* where, in the light of all the authorities, it is held that a defendant may consent to a less jury than twelve. *State* v. *Kaufman,* 33 Am. R. 148. The court says: "A conviction can only be legally obtained in a criminal action upon competent evidence; yet if the defendant fail at the proper time to object to such as is incompetent, he cannot afterwards do so. He has a constitutional right to a speedy trial, and yet he may waive this provision by obtaining a continuance. A plea of guilty ordinarily dispenses with a jury trial, and it is thereby waived. This, it seems to us, effectually destroys the force of the thought that "the state (the public) have an interest in the preservation of the lives and the liberties of the citizens, and will not allow them to be taken away without due process of law."

But following the analogy further, "the defendant shall enjoy the right to be confronted with the witnesses against him;" and yet it has been held that where the prosecution present an affidavit for continuance on the ground of the absence of material witnesses, the defendant may waive this right, admit the affidavit and proceed to trial. This is the practice in civil cases, which the court holds to be applicable in criminal cases. *Territory* v. *Perkins,* 2 Mont. 467.

So, also, when a defendant in a criminal case becomes a witness at his own request, he thereby waives the constitutional provision that one accused person cannot be compelled to give evidence against himself. *State* v. *Wentworth,* 20 Am. R. 668; 65 Maine, 234.

If one can be waived why not the other?

A party is entitled to compulsory process for his witnesses, yet the court say it can be made conditional. He shall not be required to testify against himself, and yet he may waive it.

WADE, C. J.    This is an indictment for murder.
During the progress of the trial, one of the jurymen was
excused on account of sickness in his family, and there-
upon, with the consent of the defendants, the trial pro-
ceeded to a final conclusion before the remaining eleven
jurymen, who returned into court a verdict against the
defendants of murder in the first degree.

Had the defendants, with the consent of the prosecu-
tion and the court, in a capital case, the right or author-
ity to waive a trial before a jury of twelve men?

A common law jury consists of twelve persons.    That
is the jury secured and guarantied by the constitution.
By the law of the land, a jury of twelve persons forms a
part of the tribunal before whom a defendant charged
with a capital crime is to be tried.    Can a defendant, on
his own motion, change the tribunal and secure to him-
self a trial before a jury not authorized by and unknown
to the law?

We know of no authority authorizing anything of the
kind in a capital case.    Instances may be found in the
books in cases of misdemeanors, and also, but more
rarely, in cases of felonies, where it has been held that
a defendant might waive his right to a jury of twelve
and consent to be tried by a less number; but the weight
of authority in cases of felony is clearly against the prop-
osition.

The law has established certain tribunals, with defined
powers and forms of proceeding, for the trial of persons
charged with crime.    Security to the defendant and to
the public is only found in a strict compliance with the
law of the land.    Jurisdiction comes by following the
law.    Disorder and uncertainty follow a departure there-
from.    Neither the prosecution or the defendant, by any
act of their own, can change or modify the law by which
criminal trials are controlled.

If, with the consent of the court and the prosecution,
the defendant may have a trial with one juryman less
than a constitutional jury, why, with like consent,

might he not have a trial with one juryman more than a constitutional jury? If, by his own act, the defendant might take one from a lawful jury, we do not see why he might not add one thereto. In either case there would be a failure of jurisdiction, because jurisdiction attaches and makes valid a verdict when rendered by a jury, and a jury is twelve men.

In civil actions the statute expressly provides that in case a juryman becomes sick and is excused, the trial, with the consent of the parties, may proceed before the remaining eleven jurymen, but even in civil actions this could not be done except by virtue of a statute authorizing it, and hence the statute was enacted. In the absence of a statute consent would not confer jurisdiction. By the consent of the court, prosecution and defendant, a criminal trial ought not to be converted into a mere arbitration.

In the case of *Cancemi* v. *The People*, 18 N. Y. 136, the court says: "Criminal prosecutions involve public wrongs," a breach of public rights and duties which affect the whole community, considered as a community, in its social and aggregate capacity. 3 Bl. Com.; 2 id. 4, 5. The end they have in view is the prevention of similar offenses, not atonement or expiation for crime committed. Id. 11. The penalties or punishments for the enforcement of which they are a means to the end are not within the discretion or control of the parties accused; for no one has a right, by his own voluntary act, to surrender his liberty or part with his life. The state, the public, have an interest in the preservation of the liberties and the lives of the citizens, and will not allow them to be taken away "without due process of law" (Const. art. I, sec. 6), when forfeited, as they may be, as a punishment for crime. Criminal prosecutions proceed on the assumption of such a forfeiture, which, to sustain them, must be ascertained and declared as the law has prescribed. . . . These considerations

make it apparent that the right of a defendant in a criminal prosecution to affect, by consent, the conduct of the case, should be much more limited than in civil actions. It should not be permitted to extend so far as to work radical changes in great and leading provisions as to the organization of the tribunals or the mode of proceeding prescribed by the constitution and the laws.

Effect may justly and safely be given to such consent in many particulars, and the law does, in respect to various matters, regard and act upon it as valid. Objections to jurors may be waived; the court may be substituted for triers to dispose of challenges to jurors; secondary in place of primary evidence may be received; admission of facts are allowed; and in similar particulars, as well as in relation to mere formal proceedings generally, consent will render valid what without it would be erroneous. . . . But when issue is joined upon an indictment, the trial must be by the tribunals, and in the mode which the constitution and laws provide without any essential change. The public officer prosecuting for the people has no authority to consent to such a change, nor has the defendant. Applying the above reasoning to the present case, the conclusion necessarily follows that the consent of the plaintiff in error to the withdrawal of one juror, and that the remaining eleven might render a verdict, could not lawfully be recognized by the court at the circuit, and was a nullity. If a deficiency of one juror might be waived, there appears to be no good reason why a deficiency of eleven might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone. It would be a highly dangerous innovation in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and laws establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors, and we think it ought not to be tolerated.

In the case of *The State* v. *Mansfield*, 41 Mo., Wagner, J., says: " A jury must consist of twelve men, no more, no less; no other number is known to the law, and they must appear upon the record to have rendered their verdict." *Rex* v. *St. Michaels*, 2 Blackst. 719; *Dixon* v. *Richards*, 2 How. 771; *Jackson* v. *State*, 6 Blackf. (Ind.) 461; *Brown* v. *State*, id. 561. The petit jury, says Chitty, must consist of precisely twelve, and is never to be more or less, and this fact it is necessary to insert upon the record. If, therefore, the number returned be less than twelve, any verdict must be ineffectual, and the judgment will be reversed on error. 1 Chit. Crim. Law, 505.

After commenting upon the reasons given in the case of *Cancemi* v. *The People*, above cited, Judge Wagner further says: " Another good and sufficient reason, it occurs to us, is, that the prisoner's consent cannot change the law. His right to be tried by a jury of twelve men is not a mere privilege; it is a positive requirement of the law. He can unquestionably waive many of his legal rights or privileges. He may agree to certain facts and dispense with formal proofs; he may consent to the introduction of evidence not strictly legal, or forbear to interpose challenges to the jurors; but he has no power to consent to the creation of a new tribunal unknown to the law to try his offense. The law in its wisdom has declared what shall be a legal jury in the trial of criminal cases; that it shall be composed of twelve; and a defendant, when he is upon trial, cannot be permitted to change the law, and substitute another and a different tribunal to pass upon his guilt or innocence. The law as to criminal trials should be based upon fixed standards, and should be clear, definite and absolute. If one juror can be withdrawn, there is no reason why six or eight may not be, and thus the accused, through persuasion or other causes, may have his life put in jeopardy or be deprived of his liberty through a body constituted in a manner unknown to the law. Aside from the illegality of such

a procedure, public policy condemns it. The prisoner is not in a condition to exercise a free and independent choice without often creating prejudice against him."

In *Hill* v. *The People*, 16 Mich. 357, the court says: "The true theory, we think, is that the people, in their political or sovereign capacity, assume to provide by law the proper tribunals and modes of trial for offenses, without consulting the wishes of the defendant as such; and upon them, therefore, devolves the responsibility not only of enacting such laws, but of carrying them into effect, by furnishing the tribunals the panels of jurors and other safeguards for his trial, in accordance with the constitution which secures his rights. The government, the officers of the law, bring the jurors into the box; he has no control over the matter who shall be summoned or compose the panel, upon which he may exercise the right of challenge; and the prosecution must see that electors only are placed therein, as the law requires.

"But independent of all theories, and as a practical question, we think there would be great danger in holding it competent for a defendant in a criminal case, by waiver or stipulation, to give authority, which it could not otherwise possess, to a jury of less than twelve men, for his trial and conviction; or to deprive himself in any way of the safeguards which the constitution has provided him, in the unanimous agreement of twelve men qualified to serve as jurors by the general laws of the land.

"Let it once be settled that a defendant may thus waive this constitutional right, and no one can foresee the extent of the evils which might follow; but the whole judicial history of the past must admonish us that very serious evils should be apprehended, and that every step taken in that direction would tend to increase the danger. One act or neglect might be recognized as a waiver in one case, and another in another, until the constitutional safeguards might be substantially frittered

away. The only safe course is to meet the danger *in limine*, and prevent the first step in the wrong direction.

"It is the duty of courts to see that the constitutional rights of a defendant in a criminal case shall not be violated, however negligent he may be in raising the objection. It is in such cases, emphatically, that consent should not be allowed to give jurisdiction." See, also, *People* v. *O'Neil*, 48 Cal. 258; *Carpenter* v. *The State*, 5 Miss. 163; *Jackson et al.* v. *The State*, 6 Blackf. 461; *Brown* v. *State*, 16 Ind. 496; *Bowler* v. *State*, 5 Sneed (Tenn.), 360; *Bell* v. *State*, 44 Ala. 393; *Williams* v. *State*, 12 Ohio St. 622; *Allen* v. *State*, 54 Ind. 161; 1 Bish. on Crim. Pr. sec. 761; Proff. on Jury Trial, sec. 113; *State* v. *McClew*, 11 Nev. 39, 60.

In opposition to these authorities is that of *The State* v. *Kaufman*, 51 Iowa, 578, where it is held that, upon a trial for a crime, the defendant may waive his right to trial by a jury of twelve men, and with his consent may be tried before eleven jurors. This decision cites for its support the cases of *The Commonwealth* v. *Dailey et al.* 12 Cush. 80; *Murphy* v. *Commonwealth*, 1 Met. (Ky.) 365; *Tyra* v. *Same*, 2 id. 1, which cases were misdemeanors, and expressly limit their application to misdemeanors only, and, therefore, cannot properly be cited as authority in cases of felony, and especially not in capital cases.

We therefore hold that the court erred in permitting the trial to proceed to a verdict after the withdrawal of one of the twelve jurors. The verdict of eleven jurymen in a capital case is a mere nullity, and any judgment rendered thereon against the defendant is without jurisdiction and void.

This conclusion renders it unnecessary for us to consider any of the other questions presented in the arguments of counsel.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*