[No. 1580.]

THE STATE OF NEVADA, RESPONDENT, *v.* GEORGE SIMAS, APPELLANT.

CRIMINAL LAW—INDICTMENT—GRAND JURY. Where defendant had not been held to answer before the finding of an indictment against him, and he moved to set it aside on the ground that no list of names selected as grand jurors for the session at which the indictment was found, was certified by the officer making the selection, the motion was properly overruled, since Comp. Laws, secs. 4241, 4149, 4150, declaring the grounds for a motion to set aside an indictment where the defendant has not been held to answer, before the finding of the same, include no such ground.

IDEM—IDEM—MOTION TO SET ASIDE—GRAND JURY—STATUTORY GROUNDS OF CHALLENGE. Comp. Laws, sec. 4241, declares that, where a defendant has not been held to answer before the finding of an indictment against him, he may move to set it aside on any good ground for challenge either to the panel or to any individual grand juror: *Held*, that where a defendant had not been held to answer before the finding of an indictment, and he moved to set it aside on the ground that the several members of the grand jury were not shown to be qualified grand jurors, the motion was properly overruled, since the ground of the motion was not a statutory ground of challenge to an individual grand juror, within Comp. Laws, sec. 4150, setting forth the statutory grounds for challenge of individual grand jurors.

IDEM—IDEM—BURGLARY—OWNERSHIP OF BUILDING. Where an indictment for burglary charged that defendant broke into a certain room occupied by a certain company in a particular building, it was not necessary to allege the ownership of the building, since the allegation that defendant entered the room occupied by the prosecutor sufficiently laid the ownership of the premises entered in the company.

IDEM—IDEM—IDEM—IDEM. Comp. Laws, sec. 4208, declares that an indictment shall be sufficient if it can be understood therefrom that the act or omission charged as an offense is clearly and distinctly set forth, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended: *Held*, that where an indictment for burglary charged that defendants entered into a certain room occupied by a certain company as a store, it was not necessary to allege that the company was either a corporation, an association, or a copartnership.

IDEM—BURGLARY—INSTRUCTION—OWNERSHIP PRESUMED FROM POSSESSION. Where an indictment for burglary charged that defendant broke and entered a room occupied by a certain company as a store, it was proper to refuse an instruction from which the jury would have been led to believe that it was incumbent on the state to show ownership of the company otherwise than by its possession and occupancy of the store.

IDEM—IDEM—IDEM—CORPORATE OWNER. Where defendant was charged with having burglarized a room occupied by a company as a store,

it was not error to refuse an instruction that unless the jury found from the evidence, beyond a reasonable doubt, that the company was a corporation duly organized and existing, they must acquit the defendant.

IDEM—IDEM—IDEM—SUFFICIENCY OF.  Where, on a prosecution for burglary, the court stated to the jury each fact essential to be proven by the state, and said that unless they believed, beyond a reasonable doubt, each of the facts, they must acquit the defendant—that nothing was to be taken by implication against the defendant; that the law presumed him innocent of the crime until he was proven guilty beyond a reasonable doubt, by competent evidence, and that, if the evidence left on the minds of the jury a reasonable doubt, they should acquit him, and that they must determine the question of his guilt from all the evidence in the case; and that unless they could say, after a consideration of all the evidence in the case, that every essential fact was proved beyond a reasonable doubt, they should find for the defendant—the instructions fully informed the jury as to their duty.

IDEM—IDEM—IDEM—PROVINCE OF JURY.  It was not an error to refuse an instruction that the jury are the sole judges of the facts and every fact essential to the proof of the crime alleged, since such instruction might have misled the jury into the belief that they were judges as to what were the essential facts to be proved by the state.

IDEM—IDEM—IDEM—MODIFICATION OF—BREAKING NOT NECESSARY.  Where an indictment charged defendant with breaking and entering a room occupied by a company as a store, and the defendant offered an instruction to the effect that, before the jury could find a verdict of guilty, the state must show, beyond a reasonable doubt, that defendant broke and entered the store, it was not error to modify the instruction by striking out the words "broke and," since, under the statute, burglary is the entering in the nighttime of any building.

IDEM—IDEM—IDEM—CONFESSION.  An instruction, that, if the jury believed that defendant made confessions as alleged and attempted to be proved in the case, they should treat them as they would any other testimony, was proper.

IDEM—IDEM—IDEM—IDEM—WEIGHT TO BE GIVEN.  A charge that the confessions of a prisoner out of court are doubtful species of evidence, and should be acted upon with great caution, and, unless they are supported by some other evidence tending to show that the prisoner committed the crime, they are rarely sufficient to warrant a conviction, was erroneous, since the weight to be given to the confession is an inference of fact to be made by the jury, and not an assumption of law to be made by the court.

IDEM—EVIDENCE—LIMITED BY INSTRUCTIONS—WHEN OMISSION NOT ERROR.  Where certain evidence for the state was admitted against the objection of defendant, and the court stated that it would properly limit the evidence by its instructions, and failed to give such an instruction, but no suggestion was made to the court in respect to such evidence, except as stated, defendant could not assign error for the court's failure to limit the effect of the evidence.

Points decided.

IDEM—BURGLARY—CONFESSIONS—INDUCEMENT. Where, on a prosecution for burglary, the state called a deputy sheriff to prove certain alleged confessions as to what defendant had said, and his testimony was excluded as inadmissible because it appeared that they had been made subsequent to inducements held out to defendant, it was not error to permit the witness to testify that defendant showed him the place where certain goods were, which the witness found concealed at that place, and which were proved by other witnesses to be the property charged to have been taken.

IDEM — IDEM — IDEM — WHEN ADMISSIBLE — INDUCEMENTS. Where, on a prosecution for burglary, defendant's brother had testified that a deputy sheriff and deputy constable had told him that it would be better for the defendant to tell all about the thing, and give up the property taken, and that he had told the defendant at a certain time what these officers had said, and the state called the deputy constable to prove a certain confession, and defendant's counsel objected on the ground that the alleged confession was made subsequent to the time of the conversation between defendant's brother and the witness, it was not error to admit such evidence, it appearing that the confession in question was made the day preceding the inducements offered.

IDEM—JURY—CHALLENGE—BIAS. Comp. Laws, sec. 4307, declares that in a challenge for an implied bias one or more of the causes stated in section 340 must be alleged, and in a challenge for actual bias it must be alleged that the juror is biased against the party challenging him: *Held,* that where, on a trial for burglary, the juror was challenged by the defendant "for cause," such challenge was insufficient.

IDEM—IDEM—IDEM—OPINION. Where some answers of a juror to questions by defendant's counsel tended to show that a juror had formed an opinion concerning the guilt or innocence of defendant from what he had heard on the street, but he stated that he had not formed any opinion, it was not error not to remove such juror.

IDEM—IDEM—IDEM—IDEM—NEWSPAPERS. Where a juror testified that he had formed an opinion concerning the guilt or innocence of defendant from what he had read in the newspapers; that he would be wholly governed by the evidence given in the case, and disregard any opinion that he may have formed from newspaper accounts; and that he had no prejudice or bias for or against defendant, and knew of no reason why he could not give him a fair trial, it was not error not to remove such juror.

APPEAL from the Second Judicial District Court, Washoe County; *B. F. Curler*, Judge.

George Simas was convicted of burglary, and he appeals. Affirmed.

The facts sufficiently appear in the opinion.

*A. E. Cheney, O. H. Mack,* and *E. D. Vanderlieth,* for Appellant:

I. The motion to set aside the indictment should have been granted. "A list of the names so selected as grand jurors shall be made out and certified by the officers making such selection and be filed in the clerk's office, and the clerk shall immediately issue a venire, directed to the sheriff of the county, etc." (Compiled Laws, sec. 3869.) The foundation of the right or authority for the clerk to issue the venire is a lawful certificate filed in his office. Without it, any venire which he issues is void. Being a ministerial officer exercising a special statutory power, there is no presumption of jurisdiction, and the record must show a compliance with conditions which alone authorize the exercise of the power. As well might he issue a summons without a complaint being filed, an attachment without affidavit or undertaking, an injunction upon the verbal order of the judge, or a warrant of arrest without pleadings to support it. It is not an instance of an imperfect exercise of power by the clerk, but absence of any right to act at all. The certificate is the only legal evidence of the fact of the selection of certain persons to be grand jurymen, and is *prima facie* proof of the qualifications of those selected. Without it, there is nothing which establishes either the fact of any selection having been made or that the persons selected are qualified. The paper filed with the clerk with nothing but the names written thereon was no more authority for him to issue the venire than if there had been nothing thereon. The oral direction of the district judge to issue the venire imparted no force to the clerk's act, for his authority to issue the venire comes from the statute when the certificate is filed and not from order of the judge or court. The provision for making and filing the certificate is for the protection of those accused of crime, and a guaranty that the grand jury has been impartially selected and is composed of qualified citizens. It is one ground of the motion that it was not shown that the members of the grand jury were qualified jurors. Upon the hearing of the motion no proof was given upon that point. In the absence of a certificate or evidence, there can be no

presumption that they were qualified jurors. The action of the court in ordering a certificate to be made and filed as of the date of the issuing of the venire is of no effect. A ministerial act done without jurisdiction is not given vitality by any such proceeding. Criminal proceedings and personal liberty rest ‘upon more secure foundations. The motion should have been ,granted. (*State* v. *McNamara,* 3 Nev. 70; *Bruner* v. *Superior Court,* 92 Cal. 248-249; *State* v. *Greenman,* 23 Minn. 210-211.)

II. The demurrer to the indictment should have been sustained. There is no allegation of ownership of the building alleged to have been burglarized. For all that appears, it may have been the property of the defendant. It must be alleged that it is the property of another. (*Com.* v. *Perris,* 108 Mass. 1.) There is no averment who or what the Nevada Hardware and Supply Company is—whether a partnership, association or corporation. Neither was there any proof of its existence.

III. It appears from the bill of exceptions that Mr. Morrill had a fixed opinion as to the guilt or innocence of the defendant. It also appears that he had read about the case in the newspapers and that his son had stated to him what he thought were the facts in the case. True, he says he does not think what his son said to him had anything to do with his opinion. But who can say that it did not? It is quite enough—indeed, it is doubtful if it is not too much—to have trial jurors with a fixed opinion founded upon newspaper reports. It is altogether too much to require a defendant to be tried for his liberty by a juryman who has a fixed opinion as to his guilt, derived from sources which disqualifies as well as that which does not, and leave it to the jury to say upon which information he bases his opinion. It would be strange, indeed, if a newspaper report could be confirmed by a man's son and have no influence upon the opinion formed by the reading of the report. Men may honestly believe that they are not affected by such things, but for others to believe it is to fly in the face of experience of ages and the history of mankind.

IV. *J. E. Ede:* This juror testified that he had heard that the defendant and Hammersmith had robbed the hard-

ware store. He believed what he had heard. Would have
to until there was further evidence. And, if he should hear
nothing more, he would certainly be satisfied. Then this
examination was had: " By the Court—You mean you have
an opinion concerning the guilt or innocence of the defend-
ant of the crime charged? A.—No, sir. He might be inno-
cent for all I know. Judge Cheney—Let me inquire, until
you hear something though, you don't think he is, do you?
A.—No, I haven't expressed any opinion yet. Q.—You have
the opinion, but you didn't express it? A.—Yes." There-
upon the challenge was renewed, overruled, and an excep-
tion taken and no further examination of the juror was had.
This is a clear and unmistakable statement that the juror
had an opinion, absolute and unqualified, formed but not
expressed.

*A. D. Gould:* It clearly appears that this juror had a fixed
opinion of the guilt of the defendant formed upon what he
had read in the newspapers. That he believed what he read
and, until something to the contrary appeared, he would rely
upon it. In *State* v. *McClear*, 11 Nev. 39, the right of trial
by an impartial jury is fully asserted. It declares that it is
immaterial from what source the fixed opinion is derived, it
disqualifies. And such must be the law. The constitutional
guaranty is against being tried by partial jurors. The con-
sequences to the defendant are quite the same, irrespective of
the causes which create the bias. In either event the defend-
ant has placed upon him the unwarranted burden of over-
coming an adverse opinion which destroys the benefit of the
presumption of innocence. It is not claimed that impres-
sions formed from reading newspaper accounts should or do
disqualify. But it is asserted that, where from such informa-
tion a defendant is compelled to be tried by a juror who has
formed a fixed opinion (as several of these jurors had), the
constitutional right of trial by an impartial jury had been
denied.

V. The court erred in not permitting the defendant to
prove that the act of the brother of the defendant, in
pointing out to the witness Hayes the place where certain
property was deposited, was the result of the promise of
immunity and protection which had been given to the defend-

ant.  The court had ruled that the alleged admissions or con-
fessions of  the defendant were incompetent because not
voluntary.  Yet, it permitted the state to prove by Mr.
Hayes that, in consequence of what had been said in that
confession, he went with the defendant to the place where
certain property, alleged to have been stolen, was found.  If,
in consequence of a promise of protection, a person accused
of larceny puts his hand in his pocket and produces the
stolen article, is not the act induced by the unlawful prom-
ise quite as much within the protection of the rule as the
words which accompany the act?  Yet, the court ruled that
what the defendant said was incompetent and what he did at
the time was competent, although both were plainly the
result of the inducements and promises which had been held
out to him.  It will be observed that the court stated that
at the proper time instructions limiting the evidence to the
fact of knowledge of the place where the property was
located would be given.  Yet no such instruction was ever
given.

VI.  The court erred in permitting the witness Leeper to
testify that he did not make any promise of immunity or
benefit or hope to the defendant, against the specific objec-
tion of the defendant that it called for the opinion of the
witness as to the effect of the communication, instead of
requiring him to state the communication itself.  Whether
or not a confession is voluntary and admissible is for the
court alone to decide.  (6 Am. & Eng. Enc. Law, 554.)  Of
course, if there was no inducement given, the evidence was
competent.  But to permit a witness to testify that there was
none is to permit him to decide that the confession is volun-
tary and to pass upon the admissibility of his own testimony.
A similar objection and ruling was made later when, against
the objection of the defendant that the prisoner was under
arrest and that it was not shown that what he said was
voluntary, the witness Leeper was permitted to testify that
he had not at that time promised the defendant any immu-
nity from punishment or any benefit or held out any hopes or
threatened him in any way.  That clearly made the witness
and not the court the judge of the admissibility of his evi-
dence.  All confessions are *prima facie* involuntary; the

state must prove their competency before they are admissible. (6 Am. & Eng. Enc. Law, 2d ed., pp. 553–554.)

VII. After the witness Leeper had been permitted to testify that what the defendant said was voluntary, and was asked to state the conversations with the defendant, the defendant desired an opportunity to offer proof that the communication which the witness was about to narrate was after inducements had been held out to him, and therefore the evidence was inadmissible. The offer was denied by the court; an exception taken by the defendant, the witness permitted to relate the conversation, a motion made to strike it out, the motion denied, and an exception taken. Whenever objection is made to the competency or admissibility of evidence, it is the duty of the court to determine it. Whether or not a confession is admissible depends upon the circumstances of each case. To determine that question in this action, the court heard the proof offered by the state and refused to hear that which the defendant offered. The very essence of judicial action, as contradistinguished from arbitrary power, is that it decides after both sides have had an opportunity to present proofs, and not before. It was error for the court to deny the defendant an opportunity to show that what defendant had said to Leeper was caused by such promises and inducements as to make it inadmissible; and to permit the evidence to go to the jury even if an opportunity was afterwards given to make the offered proof, or the evidence stricken out, was to deny the defendant a fair trial. (*People* v. *Fox*, 121 N. Y. 449; *Palmer* v. *State*, 136 Ind. 393; *Com.* v. *Culver*, 126 Mass. 464; *People* v. *Soto*, 49 Cal. 67; *Lefevre* v. *State*, 50 Ohio St. 584; *State* v. *Kinder*, 96 Mo. 548.)

VIII. Seven instructions, offered by the defendant, the court refused to give. The indictment charges that the building burglarized was occupied by the Nevada Hardware and Supply Company. It did not allege whether that occupancy was lawful or unlawful or in what capacity or by what right the company so occupied it. The court refused to instruct the jury that proof of ownership was necessary to warrant a conviction. It is submitted that ownership of the building alleged to be burglarized is an element necessary to be alleged and proved.

IX. The sixth instruction refused requested the judge to direct the jury that they were the sole judges of the facts. No instruction of similar import was given elsewhere. The defendant had the right to have the jury instructed that they were "the sole judges of the facts and every fact essential to the proof of the offense charged."

X. The seventh instruction refused required the jury to find that the defendant both broke and entered the building. The court modified it by striking out the word "broke." Of course, there may be burglary without a breaking. But that arises only when the building is already open. Here the indictment charged both breaking and entry, and the court instructed that entry alone was sufficient.

*E. L. Williams*, District Attorney, for Respondent:

I. The motion to set aside the indictment was properly denied. The motion to set aside the indictment is, in effect, to originate a new and distinct ground of challenge to the panel of a grand jury. Our statute provides only three grounds for challenging the panel of a grand jury, and the motion does not set forth any of the grounds specified in the statutes. (Gen. Stats. 4149.) In this case it is neither claimed nor shown that there was any fraud or collusion in the selection of the grand jury; but it is argued by appellant's counsel that the provisions of the statute (sec. 3869) were not strictly complied with, while the respondent takes the position that the error complained of in respect to the uncertified list of grand jurors filed with the clerk neither prejudiced nor injured the defendant in his rights, and was consequently harmless. (*State* v. *Collyer*, 17 Nev. 275; *Keech* v. *State*, 15 Fla. 599.) It does not devolve upon the state to show that the persons drawn as grand jurors were qualified as such. (52 Vt. 316.) That the court should look with disfavor upon technical objections to harmless omissions and irregularities in the manner of selecting jurors will cite *Ferris* v. *People*, 31 How. Pr. 145; 35 N. Y. 125; 64 N. Y. 492; 12 Tex. 27; 50 Pac. Rep. 912; 41 Pac. Rep. 126.

II. The demurrer to the indictment was properly overruled. That the ownership of the storerooms of the Nevada Hardware and Supply Company, situated in the Eureka block,

was properly laid in said company, by the allegation that said rooms were occupied by them as a store. (*State* v. *Parker*, 16 Nev. 79.) It was not necessary to allege that the Nevada Hardware and Supply Company was a partnership, association, or corporation, nor to prove the same in the trial of the cause.

III. *The Challenges to the Trial Jurors:* The challenge to George Robinson upon the ground that he had formed an opinion on a material matter concerning the charge, and not as to the guilt or innocence of the defendant, was not well taken. In the challenge to Enoch Morrill as a juror upon his examination no ground was stated. I infer it was for having expressed a fixed opinion as to the guilt or innocence of the defendant based on a newspaper report. In the challenge to juror Ede, for having formed an opinion which he had not expressed, the only ground given was "for cause." The challenge to juror Comstock, on the ground that he had formed or expressed an opinion on a material issue, was made without stating any grounds. The challenge to juror Cahlan, for having formed an opinion respecting the innocence or guilt of the defendant and for having expressed an opinion respecting the merits of the case, was properly denied, considering all the evidence given in his examination. In the challenge to juror Gould, for having formed an unqualified opinion concerning the guilt of the defendant, his examination shows that the said opinion was based upon what he had read in the newspaper. The party challenging a juror for cause or implied bias must specify the particular ground or grounds of his challenge. (2 Nev. 226; 11 Nev. 98; 6 Nev. 320; 6 Nev. 128; 22 Nev. 285; 49 Cal. 161; 61 Cal. 548.) A juror is not disqualified by reason of having formed or expressed an unqualified opinion based on a newspaper report. (Gen. Stats. 4305; 49 Cal. 169; 59 Cal. 346; 61 Cal. 248; 62 Cal. 377.)

By the Court, BONNIFIELD, C. J.:

The defendant was convicted in the Second Judicial District Court in and for Washoe county of the crime of burglary, and by the judgment of the court was sentenced to imprisonment in the state prison for the term of one year.

He appeals from the judgment, and from an order denying his motion for new trial.

*Motion to Set Aside Indictment:* The trial court denied the defendant's motion to set aside the indictment, and the ruling is assigned as error. An indictment may be set aside on motion of the defendant on certain grounds named in section 4240, Comp. Laws; and, when the defendant has not been held to answer before the finding of the indictment, it may be set aside on any good ground for challenge, either to the panel or to any individual grand juror. (Section 4241, Id.)

Sections 4149, 4150, respectively, give the grounds of challenge to the panel and to any individual grand juror. The defendant in this case had not been held to answer before the finding of the indictment. He specified numerous grounds for his said motion, but the only statutory ground embraced therein, is the third ground of challenge to the panel, to wit, " that the drawing was not had in the presence of the officers or officer designated by law." (Section 4149.)

This ground is not sustained by the facts as disclosed by the bill of exceptions.

Two of the grounds alleged for the motion and argued are, substantially: First, that no list of names selected as grand jurors for said term of said court, or the session at which said indictment was found and presented, was certified by the officers making such selection; second, that the several members of said grand jury are not shown to be qualified grand jurors.

The statute does not make the failure to certify the list of names of grand jurors a ground of challenge to the panel. Neither is the alleged second ground a statutory ground of challenge to an individual grand juror, and neither of said grounds is otherwise made a statutory ground for setting aside an indictment. While said motion could have been properly made on any ground that would be good ground of challenge to the panel or to an individual grand juror, "courts have no power to originate a new and distinct ground of challenge." (*State* v. *Collyer*, 17 Nev. 275, 30 Pac. 891, and cases cited.)

*Indictment and Demurrer:* The indictment charges " that

said defendants, William J. Hammersmith and George Simas, on the 2d day of February, A. D. 1900, or thereabouts, and before the finding of this indictment, at the said county of Washoe, State of Nevada, in the nighttime, into a certain room occupied by the Nevada Hardware and Supply Company as a store, in a building known as the 'Eureka Block,' then and there situate and being, did unlawfully, feloniously, and forcibly break and enter, with the intent then and there feloniously and burglariously to steal, take, and carry away the goods, money, and property of the said Nevada Hardware and Supply Company, then and there being.   *   *   *"

The defendant demurred to the indictment on the grounds (1) that said indictment does not substantially conform to the requirements of sections 234 and 235 of the criminal practice act; (2) that the facts stated do not constitute a public offense. The demurrer was overruled and error assigned. The specific objections to the sufficiency of the indictment are: First—"There is no allegation of ownership of the building alleged to have been burglarized."

We do not think it was necessary to allege who was the owner of the building known as the "Eureka Block." It was a certain room in that building occupied by said company as a store, into which it is charged that the defendant entered. The ownership is correctly laid in the party or parties having the occupancy, possession, and control at the time of the alleged burglary.   (3 Enc. Pl. & Prac. 762, note 3; *State* v. *Parker*, 16 Nev. 79.)

It was shown by the testimony in this case that the Nevada Hardware and Supply Company occupied and had control of said storeroom at the time of the burglary. The allegation that the defendants entered into a certain room occupied by the Nevada Hardware and Supply Company as a store, in a building known as the "Eureka Block," sufficiently lays the ownership in said company of the particular premises entered.

In *People* v. *Rogers*, 81 Cal. 209, the charge was that defendant burglariously entered the store occupied by Jones & Harding, with intent, etc. It was held that the ownership of the building was sufficiently designated,

Counsel cites *Com.* v. *Perris,* 108 Mass. 1, in support of his
contention. But in that case it was charged that the defend-
ants "on  *  *  *  in the nighttime at  *  *  *  in said
county, the building known as 'Warren Block,' there situate,
did break·and enter.  *  *  *" In that indictment there
was total absence of any allegation of ownership, occupancy,
.possession, or control of said building.

The second objection is that "there is no averment who or
what the Nevada Hardware and Supply Company is—
whether a partnership, association, or corporation."

It is provided by section 4208, Comp. Laws, that the
indictment shall be sufficient if it can be understood there-
from:  "*  *  *  Sixth, that the act or omission charged as
the offense is clearly and distinctly set forth in ordinary and
concise language, without repetition, and in such manner as
to enable a person of common understanding to know what
is intended."

Under the statute and the following authorities, we do not
think that it was necessary to allege that said company was
either a corporation, an association, or a copartnership:
*People* v. *Henry,* 77 Cal. 445; *People* v. *Rogers,* 81 Cal. 209;
*Burke* v. *State,* 34 Ohio St. 79; *Hamilton* v. *State,* 34 Ohio St.
82; *Fisher* v. *State,* 40 N. J. Law, 169; *State* v. *Shields,* 89
Mo. 259, 3 Enc. Pl. & Prac. 757, 761.

*Instructions—Ownership:* The court of its own motion
instructed the jury as to the ownership of the storeroom—in
effect, that it was essential for the state to show by the evi-
dence, beyond a reasonable doubt, that the Nevada Hardware
and Supply Company, named in the indictment, was the
owner, or in the possession and occupancy, of the room
described in the indictment, before they could find a verdict
of guilty. ·The defendant asked for several instructions, by
which, doubtless, the jury would have been led to believe
that it was incumbent on the state to show the ownership of
said company otherwise than by its possession and occu-
pancy of said storeroom. These instructions were refused,
which is assigned as error. And an instruction was offered
to the effect that unless the jury found from the evidence,
beyond a reasonable doubt, that the Nevada Hardware and
Supply Company was a corporation duly organized and

existing, they must acquit the defendant. That instruction was refused, and error assigned. In view of the authorities cited above, we do not think the court erred in refusing to give either of said instructions.

The court refused the sixth instruction offered by the defendant, and this is claimed to be error. The instruction was, in part: "The jury are the sole judges of the facts, and every fact essential to the proof of the offense alleged." * * * The instruction is endorsed, "Refused for the reason that the same was given in substance. * * *" The court had stated to the jury clearly and specifically each fact essential to be proven by the state; that unless the jury believed from the evidence, beyond a reasonable doubt, each of such facts, they must acquit the defendant; that nothing was to be presumed or taken by implication against the defendant; that the law presumed him innocent of the crime charged until he was proven guilty beyond a reasonable doubt, by competent evidence; that, if the evidence in the case left upon the minds of the jury any reasonable doubt of defendant's guilt, the law made it their duty to acquit him; that the jury must determine the question of his guilt from all the evidence in the case; that unless the jury could say, after a careful consideration of all the evidence in the case, that every essential fact was proved beyond a reasonable doubt, they should find a verdict of not guilty.

The instructions given by the court we think fully informed the jury as to their duty and province in respect to matters of fact. We think the said sixth instruction was calculated to mislead the jury into the belief that they were the judges as to what were the essential facts to be proven by the state.

The seventh instruction offered by defendant was to the effect that, before the jury could find a verdict of guilty, it was the duty of the state to show beyond a reasonable doubt each of certain propositions, to wit: "* * * (3) That the defendant broke and entered that storeroom." The court modified the instruction by striking out the words "broke and." This action of the court is assigned as error. Under the statute there is but one species of burglary, the essential definition of which is the entering in the nighttime any dwelling house or tent, or any other house or building what-

ever, or any vessel, water craft, railroad, passenger, or freight car, with intent, etc. (*State* v. *Watson*, 11 Nev. 30.) The court did not err in modifying said instruction.

It is contended that instructions Nos. 14, 15, and 16 are so conflicting and self-contradictory as to require a reversal of the judgment.

Instruction No. 14, given at the request of the district attorney, was to the effect that, if the jury believe from the evidence that the defendant made the confessions as alleged and attempted to be proved in the case, they should treat and consider such confessions as they would any other testimony.

By instruction No. 15 the court charged "that the confessions of a prisoner out of court are a doubtful species of evidence, and should be acted upon with great caution; and, unless they are supported by some other evidence tending to show that the prisoner committed the crime, they are rarely sufficient to warrant a conviction."

It may be that confessions are a doubtful species of evidence, and should for that reason be acted upon with great caution; yet such conclusion is only an inference of fact, which should be made by the jury, and not a presumption or conclusion of law, to be declared by the court.

"In regard to instructions as to verbal admissions and confessions there is much conflict of authority, but the weight of authority, it is believed, is to the effect that the trial court should not make any statement which will tend to disparage the value of such evidence." (11 Enc. Pl. & Prac. 333, 334, notes.)

We do not think instruction No. 16, given at request of the district attorney, is subject to criticism. Counsel quotes only a part of a clause thereof in his brief. The instruction as given was correct.

We are of opinion that No. 14 was correct, and that No. 15 was not correct, and should not have been given. But it was in favor of the defendant, and could not have misled the jury to his prejudice. Besides, it was given at his request. (11 Ency. Pl. & Prac. 149, and cases cited.) Against the objection of the defendant, certain evidence of witness Hayes was admitted by the court for certain purposes stated

by the court. At that time, in the midst of the trial, the court, in response to a verbal request of defendant's counsel, stated that it would properly limit the evidence by its instructions. In instructing the jury on the case, the court failed to give such instruction, doubtless through inadvertence. No such instruction was presented to the court, and no suggestion was made to the court in respect to said evidence, except as above stated, doubtless through inadvertence of defendant's counsel.

" If the defendant desires the court to charge the jury upon any given point, it is his right and his business to prepare such instruction, and ask the court to give it." (*State* v. *Smith*, 10 Nev. 106.) The defendant presented a great number of instructions, but none limiting said evidence.

It has been held in numerous cases that, in the absence of a specific request, error cannot be assigned for the court's failure to limit the effect of evidence admitted for a certain purpose. (11 Enc. Pl. & Prac. 225, 227, note 2; *People* v. *Ah Yute*, 53 Cal. 613; *People* v. *Collins*, 48 Cal. 277; *People* v. *Gray*, 66 Cal. 276, 5 Pac. 240; 11 Enc. Pl. & Prac., *supra*, 217, *et seq.*)

The state called John Hayes, deputy sheriff, to prove certain alleged confessions or admissions of the defendant alleged to have been made to the witness. Testimony as to what defendant had said was excluded by the court as being inadmissible, from certain alleged facts testified to by defendant's brother, but he was permitted to testify to a certain act of the defendant; that is, that the defendant showed him the place where certain goods were, which the witness found concealed at the place pointed out, and which were proved by other witnesses to be the property of the Nevada Hardware and Supply Company, and were proven to have been feloniously taken from the room described in the indictment on the night of the alleged burglary. It is claimed that the admission of the testimony as to what the defendant did as aforesaid was reversible error. But we think the evidence was properly admitted. (1 Greenl. Ev. 231; *People* v. *Ah Ki*, 20 Cal. 178; *Deathridge* v. *State*, 1 Sneed, 80; 2 Benn. & Heard Cr. Cas. 615; *Beery* v. *U. S.*, 2 Colo. 186; 3 Am. & Eng. Enc. Law, 481, note 2.)

The state called Deputy Constable Leeper to prove certain alleged confessions and admissions made to him by the defendant. The witness was asked to state whether or not he had any conversation with the defendant on the 9th or 10th of February. Defendant's counsel objected to the question " upon the ground it appears from the evidence which has already been produced that that was subsequent to the time of the alleged conversation with his brother, and that Mr. Leeper was the officer that had held out the inducement as testified by Emanuel." The court replied, " I don't think it is shown that it was subsequent to that conversation."

Emanuel Simas, defendant's brother, had testified that Deputy Sheriff Hayes and Deputy Constable Leeper had said to him that it would be better for the defendant to tell all about the thing; to give out the knives and razors and other things; that the trial would be lighter for him, etc. He testified that he had told the defendant, at a certain time named, what these officers had said. On this testimony the proffered evidence of Mr. Hayes as to defendant's alleged confession to him was excluded. It was the above evidence of Emanuel that counsel referred to in his objection to the question put to Mr. Leeper.

The examination of witness Leeper was continued ¦by the district attorney. He testified to a certain conversation he had with the defendant on the morning of the 9th day of February, and that he had another conversation on the evening of the same day, at 7 o'clock. He was asked to state what the latter conversation was. To this counsel objected, and stated, "I also desire to offer proof at this time to show that this conversation was after the inducements had been held out to the defendant." The inducements referred to were those testified to by Emanuel, given above. By the Court to Leeper: " What day did you say this was?" Answer: "This was on the evening of the 9th (February), about 7 o'clock." By the Court: "The offer at this time will be denied."

It is urged by counsel that the denial of said offer at that time is fatal error, and he cites several authorities to support his contention. We do not think these authorities are in point. They are to the effect that in a criminal case, when

an alleged confession of the defendant is offered in evidence against him, and he objects to its admission on the ground that he has been induced to make the confession through threats or promises of favor, etc., and offers evidence to prove such inducement, it is error to admit the confession before giving the defendant the opportunity to produce his proffered evidence. But in this case the defendant's witness Emanuel had testified fully as to the inducement offered to the defendant, and clearly and definitely fixed the date thereof as Saturday, the 10th day of February—the day after the alleged confession to Leeper.

It was not claimed that any mistake had been made as to the date of said inducements by Emanuel. It was not proposed to show by any other evidence than that given already by Emanuel that the said inducements were given prior to the confession made to Leeper. Indeed, it appears that the defendant had no other evidence to offer; for subsequently Emanuel was recalled by the defendant, and testified as before as to the date of said inducements, and did not testify to any other inducements as having been offered to defendant at any other time. Defendant produced no other witness on the subject, although the court informed the defendant, after Leeper had testified to the said conversation of the evening of the 9th, that he could then introduce any evidence he might have concerning the matter.

There was nothing in the former or latter evidence of Emanuel, or any other evidence in the case, tending to show that the confessions made to Leeper on the 9th of February, as he testified, were subsequent to any inducements held out to the defendant. It seems that counsel had in mind that by the testimony which Emanuel had given it appeared that the alleged confession was made subsequent to said alleged inducements, to which Emanuel had testified, while the court was satisfied to the contrary. It clearly appears that the court was correct. The earnest contention of counsel that the court erred with respect to the admission of the alleged conversation had between Leeper and the defendant on the evening of the 9th day of February is without merit.

*The Jury—Challenges:* Enoch Morrell was challenged by defendant "*for cause,*" challenge denied, and the ruling

assigned as error. " In a challenge for implied bias one or more of the causes stated in section three hundred and forty must be alleged. In a challenge for actual bias, it must be alleged that the juror is biased against the party challenging." (Comp. Laws, sec. 4307.) This was not done, and consequently the challenge was insufficient to raise any point for the consideration of this court. (*State* v. *Vaughan*, 22 Nev. 285, 20 Pac. 733; *State* v. *Gray*, 19 Nev. 212, 8 Pac. 456; *State* v. *Raymond*, 11 Nev. 98; *State* v. *Squaires*, 2 Nev. 226.) In *State* v. *Chapman*, 6 Nev. 320, it was held that, when the only specification of grounds of challenge to a juror was " for cause," it was entirely insufficient, and that on appeal no objection would be entertained. The statute and the above authorities sustain the ruling of the court denying the challenge to juror Morrell.

The defendant challenged J. E. Ede and A. D. Gould, each upon the ground that the juror had formed an unqualified opinion concerning the guilt or innocence of the defendant. Each challenge was denied, and the ruling assigned as error. The answers of Mr. Ede to questions put to him by the district attorney tend to show that he had not formed any opinion whatever as to the guilt or innocence of the defendant, while some answers to questions by defendant's counsel tend to show that he had formed an opinion concerning the guilt or innocence of the defendant from what he had heard in talk upon the street. Mr. Gould testified that he had formed an opinion concerning the guilt or innocence of the defendant from what he had read in the newspapers; that he would be wholly governed by the evidence given in the case and instructions of the court, and disregard any opinion he might have formed from newspaper accounts. Each of them testified that he had no prejudice or bias for or against the defendant, and that he knew of no reason why he could not give the defendant a fair trial.

In *State* v. *McClear*, 11 Nev. 39, the court, after an extended consideration of the question of the competency of trial jurors, and the citation of numerous authorities, said: "Now, it does not follow from anything we have said, or from any of the opinions we have quoted, that the mere fact that the juror had formed or expressed an opinion upon the guilt or

innocence of the defendant necessarily renders him an incompetent juror. As a matter of fact, it is well known that in this enlightened age, where railroads, postoffices, and the telegraph open up every avenue of communication, and where every man reads, or ought to read, the newspapers containing the current news and events of the day, a man who may have formed and expressed an opinion that defendant is guilty or innocent from what he has read in the daily papers, or heard from idle rumor on the street, or partial statements gleaned from casual conversations with witnesses or other persons, may nevertheless be a competent juror, and might, upon a full hearing of the case, from the testimony delivered under oath in a court of justice, be fully prepared to render an impartial verdict according to the law and the evidence."

The jurors being examined in the presence of the judge of the trial court, and subject to his observation and examination, and the judge in most instances being personally acquainted with the jurors, where there is not a dense population from which the jurors are summoned, his judgment as to the qualification of the jurors is entitled to great weight, and should not be overruled by the appellate court unless it is clearly manifest that he has erred in his rulings upon the challenge interposed. It devolves upon the appellant to affirmatively and clearly show error. Considering the whole examination of these jurors, respectively, we cannot say that either of them had "formed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged," in the sense of the statute; that is, "an opinion so deliberately entertained that it had become a fixed and settled belief of the prisoner's guilt or innocence." (*State* v. *McClear*, 11 Nev., *supra*.)

Some other objections were made during the progress of the trial, and exceptions taken to the rulings of the court thereon, but we do not consider that they require consideration in this opinion.

Not finding that the court misdirected the jury in the matter of law, nor that the verdict of the jury is against law or contrary to the evidence, as alleged as grounds for defendant's motion for new trial, and finding no material error

in the record, the order and judgment appealed from are affirmed.

I concur:   BELKNAP, J.

MASSEY, J., concurring:

It is with reluctance that I give my assent to that part of the opinion which holds that it was not error to allow the juror Enoch Morrell, under the facts of the record, to remain on the jury.

While it is true that the challenge of this juror failed to state any one of the causes prescribed by section 340 of the criminal practice act, yet it is apparent that the court treated the challenge as based upon the eighth subdivision of said section.

But, being unwilling to disturb the settled rule announced in the cases cited, I therefore concur.